RICHARD A. ENCH, PLAINTIFF-APPELLANT, v. MAYOR AND COUNCIL OF THE TOWNSHIP OF PEQUANNOCK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued May 9, 1966—Reargued June 6, 1966—Decided July 8, 1966.

*Mr. Milton H. Goldberger* argued the cause for appellant.

*Mr. Herbert A. Vogel* argued the cause for respondents.

The opinion of the court was delivered

PER CURIAM. Plaintiff filed a complaint seeking reinstatement of a resolution of the Pequannock Township Council which granted him a franchise to build and operate a garbage incinerator and which was later rescinded by the Council. The complaint also sought damages for the rescission. After trial the Superior Court, Law Division, entered judgment for the defendants. We certified plaintiff's appeal on our own motion prior to argument in the Appellate Division.

On April 29, 1964, the plaintiff applied to the Council for a franchise, pursuant to *N. J. S. A.* 40:66–6, to build and operate a garbage incinerator on a tract of land in the township.[1] On June 9, 1964 the Council, by resolution, granted plaintiff a "franchise to build and operate an incinerator or waste disposal plant for a period of twenty (20) years in accordance with Township ordinances and all State codes and regulations."

Within the next two weeks news of the proposed incinerator spread, and a large number of the township's residents expressed strong disapproval of the Council's action. This disapproval led to a public protest meeting which was attended by several members of the Council. Thereafter, the Township Clerk conducted a post card poll of the taxpayers which confirmed the existence of an overwhelming opposition to the construction of a waste disposal plant in the township.

---

[1] *N. J. S. A.* 40:66–6 provides:

The governing body may by resolution grant to any person a franchise for the erection and operation within its limits of a crematory for the incineration of refuse, garbage, dead animals, night soil and other waste matter, for any term not exceeding twenty years, upon such terms and conditions as such governing body shall impose in the resolution. Such franchise shall not become operative, unless an acceptance thereof in writing, executed by the person to whom it is granted, is filed with the municipal clerk within three months after the passage of such resolution. The powers and privileges granted by this section are in addition to and not in lieu of any powers and privileges conferred by any other laws creating or affecting any municipality." *P. L.* 1900, *c.* 161.

See *Conover v. Long Branch Commission*, 65 *N. J. L.* 167 (*Sup. Ct.* 1900).

On July 27, 1964 the plaintiff notified the township in writing that he was accepting the franchise as required by *N. J. S. A.* 40 :66–6. On August 6, 1964, the Township Clerk notified the plaintiff that the Council at its regular meeting on August 11, 1964, would consider rescinding the resolution of June 9. At the meeting on August 11 the Council voted to take this action and voided plaintiff's franchise. It seems clear from the record that between July 27, the date of plaintiff's acceptance, and August 11, the date of the rescinding resolution, the plaintiff did not take any significant action toward the completion of his project.

In dismissing the complaint the trial judge found that the resolution of June 9 was based upon an understanding by all parties that the proposed incinerator would be "nuisance free," even though this understanding was not explicitly set forth in the resolution. He concluded: "The failure of the parties to clarify what they meant by this extremely ambiguous and subjective gauge renders the agreement unenforceable."

On this appeal plaintiff contends the trial court erred in holding that the terms of the franchise were unenforceably vague. He further contends that his acceptance of the franchise created a binding contract which the township could not unilaterally rescind without just cause. The defendants assert that the action of the trial court was correct and that, in any event, the rescission was a proper exercise of the township's police power.

At the oral argument before us reference was made for the first time to the township's zoning ordinance, and we ordered a reargument for the purpose of considering the effect of the ordinance upon this case. On the basis of new information concerning the township's zoning ordinance, we find it is unnecessary to consider the issues originally raised on this appeal.

The land designated as the site of the proposed incinerator in the resolution granting the franchise is in an industrial

zone. At the time of the resolution that zone was governed by the following restriction:

"In an Industrial Zone no building or premises shall be used, and no building shall be erected which is arranged, intended or designed to be used for any of the following trades, industries or uses:

\*        \*        \*        \*        \*        \*        \*        \*

5. Incineration, reduction storage, dumping or use in any manner whatsoever of slaughterhouse refuse, kitchen refuse, rancid fats, garbage, dead animals or offals, except by the municipality or its agencies or, at its discretion, properly authorized and regulated collectors."

It seems clear to us that the above provision was intended to bar all incinerators from this zone except those necessary to accommodate the disposal of garbage collected within the township. In this manner the township sought to limit both the size and number of garbage disposal plants and thus guard against the adverse consequences (odor, soot, traffic, etc.) which often accompany this type of use.

In the present case the incinerator contemplated by plaintiff's franchise is not limited to handling garbage collected in the township. No such limitation is contained in the resolution granting the franchise, and no limitation is placed on the size or capacity of the incinerator which plaintiff may erect. The resolution provides that if Pequannock undertakes its own garbage collection system the facilities of the incinerator shall be made available to the township at cost. By so providing, the resolution unmistakably anticipates that most, if not all, of plaintiff's profits will be derived from burning garbage collected and trucked in from other municipalities.[2]

---

[2] The possibility of a large number of garbage trucks entering the township from other municipalities was apparently an important cause of the opposition to the incinerator. The residents of Pequannock were concerned not only with possible traffic hazards but also with the stigma which might attach to the township. One of the councilmen testified that many citizens feared "Pequannock would become known as the garbage town of Morris County." Another testified that citizens were afraid people would say: "[I]f you want to find your way to Pequannock, all you have to do is follow any garbage truck going up the highway and you would arrive there."

██ The Council's resolution of June 9 purported to give plaintiff the right to use land in a manner inconsistent with the local zoning ordinance. For this reason we hold that the resolution was void *ab initio* and that plaintiff is not entitled to proceed according to its terms. If a municipality wishes to permit a land use forbidden by local ordinance it must either amend the ordinance or follow the necessary procedures for granting a variance; it cannot short cut these procedures and permit the forbidden use by means of a resolution which provides for a contract with the landowner. See *Houston Petroleum Co. v. Automotive Products Credit Ass'n,* 9 *N. J.* 122 (1952) ; *V. F. Zahodiakin, etc., Corp. v. Zoning Bd. of Adjustment, Summit,* 8 *N. J.* 386 (1952). This distinction in procedure is important to a municipality's residents because the passage of a resolution does not require the public notice mandated with respect to the changing of an ordinance or the notice to adjacent landowners prerequisite to the granting of a variance.

The judgment of the trial court is affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For reversal*—None.