225 N.J. Super. 116 (1988)
541 A.2d 1101
ANTHONY DELL'AQUILA, PLAINTIFF-APPELLANT,
v.
BOARD OF ADJUSTMENT OF THE CITY OF HOBOKEN, DEFENDANT-RESPONDENT. and DANIEL GANS, GEORGE VALLONE, AND FREDERICK L. WOECKENER, INTERVENORS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 20, 1988.
Decided May 18, 1988.
*117 Before Judges FURMAN, LONG and SCALERA.
Joseph Meehan argued the cause for appellant.
Roger A. Lowenstein argued the cause for intervenors-respondents (Dickson, Creighton and Lowenstein, attorneys, Roger A. Lowenstein, on the brief).
Peter Daghlian, attorney for respondent, Board of Adjustment of the City of Hoboken adopted the briefs submitted by intervenors.
Frederick L. Woeckener, appeared pro se.
The opinion of the court was delivered by SCALERA, J.A.D.
Plaintiff, Anthony Dell'Aquila filed this action in lieu of prerogative writs challenging the Hoboken Board of Adjustment's (Board) grant of a use variance and final site plan approval to intervenors, Daniel Gans and George Vallone. They had sought the approval of the Board to build a high rise residential condominium complex on property in a waterfront industrial zone presently containing a substantially vacant warehouse. Plaintiff is the owner of property located across the street and objects, arguing that the proposed construction will adversely affect the value of his property and obstruct his view.
A brief resume of the history of this case is warranted. In 1984, Doris Palumbo, wife of intervenor, Frederick L. Woeckener, invested with Gans and Vallone, principals of Westbank Construction Company (Westbank) a sum of money she had received as a result of a personal injury claim. The money was used as a down payment on the property in question located at 1601 Willow Avenue in Hoboken. The parties to the venture agreed that Palumbo was to receive a portion of the profits from the development of the property pursuant to a written partnership or joint venture agreement which would be negotiated at a later time. In furtherance of the plan, Palumbo *118 entered into a contract with Frank Lambie Realty Company, to buy the property, contingent upon obtaining a variance allowing construction of high rise residential units. She assigned her interest in that contract to Gans and Vallone to effectuate their application to the Board for the necessary variance and site plan approval.
The future partnership, contingent upon approvals by the Board was memorialized in a written memorandum wherein Palumbo was to receive a $2,750,000 return on her advance of $275,000 or, at her option, 20% of the net profits. However, if the net profits were less than $5.5 million then Palumbo and Westbank would split the profits equally. Her minimum return was later raised to $3,000,000 based on her having negotiated an extension of the closing date on the contract to purchase the property. Palumbo's interest in the property was not disclosed to the Board in the application or otherwise.
The Board conducted a hearing on the application on January 10, 1985. Frank P. Marciano appeared as attorney for the applicants and Peter G. Mangin appeared for Dell'Aquila, who was objecting. Mangin unsuccessfully objected to the jurisdiction of the Board, based on failure to comply with the notice provision of N.J.S.A. 40:55D-12 and also because disclosure of partnership percentages had not been made as required by N.J.S.A. 40:55D-48.1.
Testimony was given by Frank Lambie; Gregory Sholom, a real estate agent who was unsuccessful in leasing the warehouse; Ruth Weiss, a planning expert; Theodore Strauss, a licensed architect; Jerome Fine, a consulting engineer; and Joseph M. Lynch, a traffic planning expert. Thereafter, the variance and site plan were approved unanimously and a resolution was signed on January 21, 1985.
Dell'Aquila instituted this action on February 22, 1985, seeking to set aside the Board's approval. Gans and Vallone were permitted to intervene in the action and a pretrial conference was scheduled before Judge Walter J. Hudzin for September 17, 1985.
*119 On June 27, 1985, Linda P. Torres, attorney for Gans and Vallone wrote to Christian Stueben, then attorney for Dell'Aquila, stating that she had been informed by her clients that the suit had been resolved and she enclosed a copy of a stipulation of dismissal. She indicated that she was forwarding the original release to her clients for presentation directly to Dell'Aquila but enclosed a copy for Stueben. On September 16, 1985 Torres sent a letter to Peter Daghlian, attorney for the Board, requesting that he sign the stipulation and return it to her for filing with the court. A copy of this letter was sent to Stueben. Torres had previously informed Judge Hudzin that they would not be attending the scheduled hearing because the matter had been settled. The stipulation of dismissal was filed with the court by her on September 23, 1985.
However, a weekly calendar call notice for February 21, 1986 was issued notwithstanding the filing of the stipulation of dismissal. A conference with the court was then held on March 24, 1986 at which time Dell'Aquila vehemently denied that he had consented to have his suit dismissed. He then filed a motion seeking to have the case restored to the active trial calendar and submitted a supporting affidavit to the effect that he never resolved or negotiated a settlement of the dispute with Vallone or Gans, that they had never presented him with any release to sign nor had he ever seen any copy which had been forwarded to his attorney. Stueben's certification indicated that his office had mistakenly signed his name to the stipulation and returned it to Torres but that he understood that the stipulation would not be effective or filed in any event until the original release had been signed by his client. Woeckener's certification recounted that he had had a lengthy luncheon meeting with Dell'Aquila who had informed him that he would instruct his attorney to dismiss the suit challenging the granting of the variance. Plaintiff was represented at the motion by his present attorney. Judge Hudzin denied the motion and this appeal followed.
*120 After a motion was made for summary disposition or acceleration, the matter was remanded by this court for further findings of fact and conclusions of law regarding "the facts surrounding the execution of the stipulation of dismissal, failure to exhaust an administrative remedy, [and] whether there was a showing of any potential substantial merit to the prerogative writ action and laches."
Hearings were conducted by Judge Dorothea O'C. Wefing who rendered a letter opinion in which she concluded that Dell'Aquila was not entitled to have the case reinstated.
It was revealed that Palumbo's husband, Woeckener, had been appointed as Law Director by the new Hoboken city administration in July, 1985. At this point the factual assertions regarding communications amongst the parties diverge. Gans and Vallone contend that they learned that Dell'Aquila contacted Woeckener within days after the latter's appointment and indicated that he would withdraw the lawsuit and later advised that he had so instructed Stueben. Stueben testified that even though he and plaintiff went away together for several weeks that summer he did not know that plaintiff and Woeckener had communicated. Dell'Aquila testified that he did meet with Woeckener twice, but insisted that he had never agreed to settle the case and had never authorized Stueben to sign any stipulation of dismissal. Woeckener testified that he and Stueben met. Stueben informed him that he would be doing legal work for Dell'Aquila and asked Woeckener to make "trouble" for him in order to generate substantial legal fees which he proposed to share with Woeckener. Woeckener refused. Woeckener also indicated that plaintiff met with him at a restaurant outside of the Lincoln Tunnel and again for lunch at another restaurant at which time they agreed that all involved would benefit from their mutual cooperation and that the suit should be dismissed. Further, Dell'Aquila also had expressed an interest in buying the property and offered to be Palumbo's new partner. Marciano and Torres also testified.
*121 Judge Wefing concluded that plaintiff had made a conscious decision to dismiss the case and that it would be "neither unjust nor oppressive to refuse to permit Mr. Dell'Aquila to change his mind ... He determined to dismiss the suit and ... thereafter had a change of heart." However, she made no specific findings regarding the merits of the underlying action by the Board but noted that its formal resolution did not consist of findings of fact but only of bare conclusions. She also made observations regarding various conflicts of interest which were generated by the actions of the various attorneys involved in the entire proceedings.
We summarily affirmed her decision on that basis but later granted plaintiff's motion for reconsideration, vacated that affirmance and again remanded the matter with instructions that "the trial judge must make additional findings and should direct that the matter proceed to a full plenary hearing concerning the question of unlawful conflict of interest and the extent of any taint." In doing so we took no issue with her finding that plaintiff had authorized the settlement, but noted that,
while ordinarily settlement of litigation is to be fostered by the courts, an action in lieu of prerogative writs involving governmental action has the additional element of the vindication of the public's rights. Where there has been an allegation of impropriety affecting, as here, the grant of a variance, a trial judge may deny the dismissal notwithstanding a private litigant's initial acquiesce.
Woeckener's motion to intervene in the suit was then granted. Judge Wefing expressed some doubt over the exact extent of our directive but nevertheless, conducted a second remand hearing after which she issued a second letter opinion. She concluded that there was no impropriety present,
which would sustain an inference that the failure to disclose Palumbo's option interest sprang from an improper conflict of interest or otherwise tainted the variance application improperly. At the time of the application neither Palumbo nor her husband Frederick Woeckener held any public positions with the city and, from the record presented, it is difficult to conclude what advantage was seen in not disclosing the option ...
With regard to the settlement and dismissal of the law suit, she found that,

*122 [t]here was no testimony presented of any involvement by either Gans or Vallone in that settlement.
She therefore reaffirmed her prior determination that the case should not be reinstated.
Plaintiff's appeal from Judge Wefing's latest determination now seeks to implicate the Board's original resolution granting the variance and site plan on the merits as well as her latest findings and decision. Notwithstanding the trial judge's decision regarding plaintiff's consent to dismiss the suit or, whether any demonstrated taint or conflict, standing alone, was sufficient to vitiate the Board's actions, we have focused on the more basic issue of whether the dismissal should have been accepted by Judge Hudzin in the first instance without further inquiry.
Generally speaking, an action may be voluntarily dismissed after an answer has been filed "only by leave of court and upon such terms and conditions as the court deems appropriate." R. 4:37-1. This provision illustrates the even broader principle that a court maintains the discretion to refuse to dismiss a suit where such a disposition might serve to compromise the public interest in the litigation. 24 Am.Jur.2d, Dismissal, Discontinuance and Nonsuit, § 11 at page 11; 27 C.J.S., Dismissal & Nonsuit, § 11 at pages 331-333; 55 C.J.S., Mandamus, § 331 at page 578; Guinther v. Milwaukee, 217 Wis. 334, 258 N.W. 865 (1935). Cf. State v. Gaffey, 92 N.J. 374 (1983) (involving the attempt to unilaterally withdraw a criminal appeal). Clearly, a premature termination of this suit will prevent an inquiry into the public interest through scrutiny of the propriety of the granting of the variance and site plan approval as well as the circumstances leading up to the attempt to dismiss the action.
In response to our first remand, Judge Wefing indicated her cognizance of this when she noted,
Not raised as an issue by the Appellate Division and not addressed by this Court is whether private parties such as the plaintiff Dell'Aquila may negotiate a private settlement of litigation which so affects the public's rights. That issue is particularly sensitive here in light of the apparent disregard by many of the participants in this transaction for appropriate behavior. Not only did plaintiff's then counsel candidly admit to significant violations of his duties as *123 an attorney, the City Attorney attempted to negotiate a private settlement of this litigation at a time when his wife held an undisclosed interest in the subject property, failed to take any steps when he received what he considered to be the offer of a bribe from Dell'Aquila's then attorney and offered to place publicly held property up for bid to achieve a settlement of this case.
In remanding this matter for the second time, we also specifically noted the applicability of this principle here when we said,
Although settlements are favored in the law, even more favored is the principle that there be no private gains made through breaches of a public trust.
Notwithstanding that expressed concern, Judge Wefing did not consider such taint and conflict except as it might have formed the basis for vitiating the settlement agreement or the jurisdiction of the Board to hear the variance application in the first place. She may have felt restrained by the wording of our remand order from exercising jurisdiction over the broader question of whether such pervasive improper behavior by the parties and their attorneys was so egregious that the dismissal of the prerogative writs challenge should have been reversed and the case reinstated. However, we have no hesitancy in concluding that the extent and behavior of the actions of the parties and attorneys involved in securing the Board's original approval and of the subsequent developments culminating in the dismissal of the suit warrant a reinstatement.
This variance has never been reviewed on its merits. That is the point of a prerogative writs action. Once instituted, it is believed that the public interest will be protected by the adversary process implicated in such a litigation. Here, we have a plaintiff whose own actions in settling his prerogative writ case generate little sympathy. The fact remains however, that the public has an interest in the airing of the issues underlying the Board's action here and that that interest may have been thwarted as a result of the questionable conduct of the parties and their attorneys in securing a dismissal. It is important for the public to have confidence in the operations of government. No one viewing what has transpired in this case up to this point could have such confidence. That is why we think there should be a public hearing of the issues raised in plaintiff's prerogative writ action for the public's benefit. The fact that plaintiff *124 might be incidentally advantaged by this is of no moment to us. What is of moment is the restoration of the public's confidence in the government and the deterrent effect that this proceeding will have on those who might otherwise adopt this course of action in the future.
In this regard, plaintiff (and any other interested party who might be granted leave to intervene) should be afforded a full and adequate opportunity to raise any issue that could have been raised originally, had the suit proceeded in the ordinary course. The only exceptions, of course, are those findings and issues which have been settled and become the law of the case. State v. Hale, 127 N.J. Super. 407 (App.Div. 1974). Obviously we express no opinion regarding the ultimate disposition of the prerogative writ matter.
Thus, we reverse and vacate the dismissal of the suit challenging the Board's resolution granting the use variance and site plan approval and order that it proceed to a plenary hearing and disposition, for the reasons and to the extent hereinabove set forth.