274 N.J. Super. 464 (1994)
644 A.2d 656
WARNER COMPANY, PLAINTIFF-RESPONDENT,
v.
BARBARA SUTTON, AS SECRETARY TO THE MAURICE RIVER TOWNSHIP PLANNING BOARD; MAURICE RIVER TOWNSHIP PLANNING BOARD; MAURICE RIVER TOWNSHIP AND MAURICE RIVER TOWNSHIP COMMITTEE, DEFENDANTS-RESPONDENTS, AND NEW JERSEY CONSERVATION FOUNDATION; NEW JERSEY AUDUBON SOCIETY; AND CITIZENS UNITED TO PROTECT THE MAURICE RIVER AND ITS TRIBUTARIES, INTERVENORS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 18, 1994.
Decided June 24, 1994.
*466 Before Judges HAVEY, ARNOLD M. STEIN and ARIAL A. RODRIGUEZ.
Edward Lloyd argued the cause for appellants (Rutgers Environmental Law Clinic, attorneys; Mr. Lloyd and Margaret M. Hayden on the brief).
*467 John B. Kearney argued the cause for plaintiff-respondent Warner Company (Kearney & Brady, P.C., attorneys; Mr. Kearney on the brief).
James J. Seeley argued the cause for defendant-respondent Maurice River Township Planning Board (Seeley & Jones, P.A., attorneys; Mr. Seeley on the brief).
Richard H. Daniels, attorney for respondents Maurice River Township and Maurice River Township Committee, joins in the brief submitted and argument of counsel on behalf of respondent Maurice River Township Planning Board (Mr. Daniels on the letter in lieu of brief).
The opinion of the court was delivered by HAVEY, J.A.D.
The issue in this case is whether a Law Division judge, by consent order, may approve the settlement of land use litigation without a hearing and without the municipality adopting amendments to the zoning ordinance implementing the settlement terms. We conclude that the consent order entered here, which alters substantially the present zoning ordinance as to permitted uses and density, must be implemented by amendments to the zoning ordinance adopted pursuant to pertinent statutes. We therefore reverse, vacate the consent order, and remand for further proceedings.[1]
Warner and its subsidiary, New Jersey Silica Sand Company, own approximately 3,000 acres of land adjoining the Manumuskin Watershed in Maurice River Township. For many years Warner has engaged in the mining of sand on the site. In 1982, the property was zoned M-3, General Industrial. Mining was not a permitted use in the M-3 zone. Warner continued its mining activity as a legal nonconforming use.
*468 In 1988, the Township rezoned a portion of the M-3 district adjacent to the Manumuskin Watershed, including Warner's tract, to C-25, Conservation Zone. Warner filed an action challenging the ordinance, alleging procedural defects. Summary judgment was granted to Warner, declaring the amendatory ordinance invalid. The Township readopted the ordinance on October 20, 1988, correcting the procedural infirmities. The C-25 district permits various uses, including residential development at one unit per twenty-five acres. Mining is neither a conditional nor permitted use.
Warner applied to the defendant Planning Board for a renewal of its license to continue its mining activity. The application was in part granted and in part tabled. On October 31, 1988, Warner filed the present action in lieu of prerogative writs against the Township and Planning Board, alleging that the rezoning of its property from M-3 to C-25 constituted "spot zoning" and was an unlawful "taking" without just compensation. The complaint sought invalidation of the ordinance, damages, and approval of its mining license on the basis that the Planning Board had not acted upon its application within ninety-five days.
Appellants-intervenors are nonprofit corporations having the declared purpose of protecting open spaces and the environment (such as the Manumuskin Watershed) and the preservation of wildlife. Many members of the movant groups reside in Maurice River Township. Some live adjacent to the Warner site.
After extensive discovery and negotiations, Warner and the Township defendants reached a tentative settlement which was memorialized in a June 24, 1991 consent order. Under the proposed agreement, the Township recognized Warner's mining nonconforming use status, and that it applied essentially to Warner's entire tract. Warner abandoned its challenge to the C-25 rezoning and its damage claim, and in turn was given a conditional right to construct a planned residential village on the tract.
Thereafter, there was spirited debate concerning the consent order. Members of the Planning Board objected to many of its *469 terms. Several members of the intervenor groups participated in the debate during public hearings. After the Planning Board's objections were discussed in executive session of the Township Committee, a revised settlement was reached between Warner and the Township defendants. An amended consent order was entered on August 22, 1991, memorializing the revised settlement. The order was entered by the Law Division judge without a hearing.
The amended consent order, a thirty-six page document, gives a nonconforming-use status to Warner's mining activity on a designated portion of its site. No conditional use permit "or other municipal approval" is required under existing or "successor" ordinances as a condition to the mining activity, provided that Warner complies with the terms of a mining permit application filed with the amended consent order. The order also provides that the abandonment of Warner's nonconforming use status "shall not be presumed ... unless Warner agrees in writing with the Township that the use has been abandoned...."
Significantly, the order also provides for "alternative uses" on a portion of the property not exceeding 250 acres. Location of the alternative uses on the site will be determined by Warner, subject to the Planning Board's "adjust[ment]" in accordance with "reasonable planning criteria." The permitted alternative uses include "any or all uses ... currently allowed in [the] M-2, Light Industrial District" and all uses added as permitted uses to that zone by future amendment. The M-2 zone presently permits such uses as manufacturing, assembly or fabrication of prepared materials, warehousing, commercial printing, marinas and lumber yards, none of which are presently permitted uses in the C-25 zone.
The amended consent order also permits, as an "alternative use," a planned adult residential community consisting of up to 300 residential units. Warner agrees to preserve ten acres of open space outside the development for each acre within the development. The order does not expressly rezone the C-25 district to provide for these "alternative uses"; it states simply that the *470 Township's Zoning Map will note that Warner's tract "may be subject to Court Order" which will "be available in the Planning Department." Finally, to the extent that the terms of the order may conflict with existing development standards, it provides:
where this Order explicitly provides for a standard which differs from one in the then Ordinance (as, for example, with respect to uses), the standard of this Order shall control and shall be applied in good faith so as to mesh with all other standards of the then Ordinance in a reasonable and practical manner.

I
Intervenors contend that the amended consent order must be vacated because it intrudes upon the exclusive zoning power of the municipality.
It is a settled proposition that zoning is inherently an exercise of the State's police power. Taxpayers Ass'n of Weymouth Tp., Inc. v. Weymouth Tp., 80 N.J. 6, 20, 364 A.2d 1016 (1976). Consequently, "municipalities have no power to zone except as delegated to them by the Legislature." Ibid; Riggs v. Township of Long Beach, 109 N.J. 601, 610, 538 A.2d 808 (1988); Lusardi v. Curtis Point Property Owners Ass'n, 86 N.J. 217, 226, 430 A.2d 881 (1981). The municipal governing body has the "ultimate responsibility to establish, by the adoption of its zoning ordinances and amendments thereto, the essential land use character of the municipality." Township of Dover v. Board of Adjust. of the Tp. of Dover, 158 N.J. Super. 401, 411, 386 A.2d 421 (App.Div. 1978). It does so by the "geographical delineation of its districts and, uniformly within each district, the delineation of the uses permitted therein and the limitation schedules applicable thereto in terms of lot size, lot coverage, height restrictions and the like." Id. at 411-12, 386 A.2d 421. That delegation of power is embodied in the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -92.
A zoning ordinance adopted by a municipality must satisfy certain objective criteria: (1) it must advance one of the purposes of zoning as codified by the MLUL, N.J.S.A. 40:55D-2; (2) it must *471 be substantially consistent with the land use and housing planned elements of the Master Plan, N.J.S.A. 40:55D-62, unless the requirements of that statute are otherwise satisfied; (3) the ordinance must "comport with constitutional constraints on the zoning power"; and (4) must be adopted in accordance with statutory and municipal procedural requirements. Riggs, 109 N.J. at 611-12, 538 A.2d 808.
A municipality has no power to circumvent these substantive powers and procedural safeguards by contract with a private property owner. A zoning ordinance may not be amended or repealed "by any act of a governing body of less dignity than that which created the ordinance in the first place." Suski v. Mayor & Comm'rs of Borough of Beach Haven, 132 N.J. Super. 158, 164, 333 A.2d 25 (App.Div. 1975). If a municipality desires to allow a deviation from the permitted uses under the zoning ordinance, it must either amend the ordinance "or follow the necessary procedures for granting a variance; it cannot short cut these procedures and permit the ... use by means of ... a contract with the landowner." Ench v. Mayor & Council of Tp. of Pequannock, 47 N.J. 535, 539, 222 A.2d 1 (1966). In other words, the municipality's exercise of its police power to serve the common good and general welfare of all its citizens "may not be surrendered or curtailed by bargain or its exercise controlled by the considerations which enter into the law of contracts." V.F. Zahodiakin Eng'g Corp. v. Zoning Board of Adjust., 8 N.J. 386, 394, 86 A.2d 127 (1952); Suski, 132 N.J. Super. at 164, 333 A.2d 25, William M. Cox, Zoning and Land Use Administration, § 34-8.2 at 522-23 (1994). Such "contract zoning" is ultra vires, and "all proceedings to effectuate it ... [are] utterly void." V.F. Zahodiakin Eng'g Corp., 8 N.J. at 395, 86 A.2d 127.[2]
*472 This condemnation of "contract zoning" has been extended to consent orders which sanction the agreement between the developer and municipality. For example, in Suski, we observed that an agreement between a property owner and the borough which "amended" the borough's dune ordinance was facially illegal because statutory procedures to amend the ordinance were not followed. 132 N.J. Super. at 164, 333 A.2d 25. We concluded that "[t]he fact that the parties entered into a consent judgment which purported to approve the agreement does not make it a valid agreement." Ibid.
Similarly, in Midtown Properties, Inc. v. Madison Tp., 68 N.J. Super. 197, 202, 172 A.2d 40 (Law Div. 1961), aff'd o.b., 78 N.J. Super. 471, 189 A.2d 226 (App.Div. 1963), the property owner had obtained preliminary subdivision but before final subdivision approval was granted, the Township amended its ordinance upgrading lot-size requirements. Consequently, final approval was denied. Litigation ensued and, two years after the complaint was filed, the property owner and the Township defendants settled and incorporated the settlement terms into a consent judgment. 68 N.J. Super. at 203, 172 A.2d 40. After defendants refused to adhere to the terms of the consent judgment, the property owner moved to enforce it. Judge Halpern denied the motion, concluding:
This contract, on its face, is illegal and void. It is an attempt to do by contract what can only be done by following statutory procedure. The zoning power delegated by the Legislature to the township officials was prostituted for the special benefit of the plaintiff. Certainly, if the contract is illegal and void, having it incorporated in a consent judgment will not breathe legal life into it.
....

*473 A municipality in exercising the power delegated to it must act within such delegated power and cannot go beyond it. Where the statute sets forth the procedure to be followed, no governing body, or subdivision thereof, has the power to adopt any other method of procedure.
[Id. at 206, 207, 172 A.2d 40.]
See also, Edelstein v. City of Asbury Park, 51 N.J. Super. 368, 389, 143 A.2d 860 (App.Div. 1958) (while a municipality may enter into a consent judgment, the judgment will have no conclusive effect if the municipal action was "illegal or improper"; otherwise, municipal acts would be insulated from review "in derogation of the public interest, where they could be contrived to take the form of a judgment by consent").
Implicit in these holdings is not only the courts' concern with the municipality's surrender of its legislative function, but also the effect such consent judgments have on the public's right to be heard. Essentially, "contract zoning," particularly when it occurs during the pendency of litigation, frustrates such a right. Once a prerogative writs action is commenced, "it is believed that the public interest will be protected by the adversary process implicated in such a litigation." Dell'Aquila v. Board of Adjust. of City of Hoboken, 225 N.J. Super. 116, 123, 541 A.2d 1101 (App.Div. 1988). The obvious danger in settling such litigation, with or without a consent decree, is that it at least appears that the municipality, presumably protecting the public at large, may be bargaining away its legislative duties without public scrutiny or political accountability.
The pertinent question raised by this apparent uncompromising approach taken by the early cases is whether land use litigation can ever be settled. Resolution of the issue requires reconciliation of competing interests: the public's right to be heard and to participate in any proceeding which may result in the alteration of the zoning ordinance, and the strong judicial policy favoring settlement of litigation. See Ziegelheim v. Apollo, 128 N.J. 250, 263, 607 A.2d 1298 (1992); Nolan v. Lee Ho, 120 N.J. 465, 472, 577 A.2d 143 (1990). If the public interest can be adequately served, does a trial judge have the inherent power to approve a settlement *474 of land use litigation in order to minimize the expenditure of public funds and judicial resources?

II
Warner's underlying suit challenges the Township's rezoning of Warner's property by placing it in the C-25 zone. It is therefore an action in lieu of the former prerogative writ certiorari, since it involves the review of "administrative agency actions in general and of municipal ordinances in particular." Alexander's v. Borough of Paramus, 125 N.J. 100, 107, 592 A.2d 1168 (1991) (quoting Hills Dev. Company v. Township of Bernards, 103 N.J. 1, 45, 510 A.2d 621 (1986). As such, Warner's action is governed by Rule 4:69, which provides that "[r]eview, hearing and relief heretofore available by prerogative writs ... shall be afforded by a civil action in the Law Division...." R. 4:69-1. That power is derived from the N.J. Const. art. VI, § 5, ¶ 4, which states:
Prerogative writs are superseded and, in lieu thereof, review, hearing and relief shall be afforded in the Superior Court, on terms and in the manner provided by rules of the Supreme Court, as of right, except in criminal causes where such review shall be discretionary.
This constitutional provision grants all individuals a review "as of right" in the Superior Court in cases where they may have been entitled to a prerogative writ prior to 1947. Hills Dev. Company, 103 N.J. at 44, 510 A.2d 621.
Although Rule 4:69 affords an aggrieved party a "review, hearing and relief' as of right in the Superior Court, it neither grants nor prohibits settlement of the prerogative writs action. Nevertheless, it may be argued that, absent an explicit prohibition in the rule, the Superior Court has inherent power to approve such settlements, given the policy of the law to encourage good-faith settlement of claims. See Whispering Woods at Bamm Hollow, Inc. v. Township of Middletown Planning Board, 220 N.J. Super. 161, 172, 531 A.2d 770 (Law Div. 1987); Hon. Richard S. Cohen, Hon. Douglas K. Wolfson, Kathleen Meehan DalCortivo, Settling Land Use Litigation While Protecting The Public Interest: *475 Whose Lawsuit Is This Anyway? 23 Seton Hall L.Rev. 844, 852 (1993).
The federal and out-of-state courts have given uneven treatment to the issue. In most instances where the federal courts have implicitly sanctioned use of consent decrees which compromise local statutory and ordinance procedures, it did so in housing discrimination cases. See David L. Callies, The Use of Consent Decrees in Settling Land Use and Environmental Disputes, 21 Stetson L.Rev. 871, 879 (1992) and cases cited therein. For example, one federal court directly addressed the use of a settlement decree in land use litigation. In Mesalic v. Slayton, 689 F. Supp. 416, 420-22 (D.N.J.), aff'd, 865 F.2d 46 (3rd Cir.1988), the court found enforceable a "stipulation and order" memorializing a property owner's settlement of land use litigation with the municipality, reasoning that the order was enforceable because it was "reasonably designed to cure the alleged constitutional violations." Id. at 421. Thus, the lower court had the jurisdiction to order the agreed-upon relief. Id. at 420.
The state courts are essentially split, some holding that the court has equitable power to enter such consent decrees and others holding that a municipality may not contract away the exercise of its zoning power by settlement. See Summit Tp. Taxpayers Ass'n v. Summit Tp. Board of Supervisors, 49 Pa. Cmwlth. 459, 411 A.2d 1263, 1266 (1980); City of Boulder v. Sherrelwood, Inc., 42 Colo. App. 522, 604 P.2d 686, 689 (1979); Attman/Glazer P.B. Company v. Mayor and Aldermen of Annapolis, 314 Md. 675, 552 A.2d 1277, 1282-83 (1989); Commco, Inc. v. Amelkin, 62 N.Y.2d 260, 476 N.Y.S.2d 775, 777, 465 N.E.2d 314, 316 (1984); PMC Realty Trust v. Town of Derry, 125 N.H. 126, 480 A.2d 51, 53 (1984); Martin v. City of Greenville, 54 Ill. App.3d 42, 12 Ill.Dec. 46, 48-49, 369 N.E.2d 543, 545-46 (1977). In any event, it has recently been observed that "the pendulum is swinging in favor of using such [consent] decrees even if some former process is lost, so long as there is some process in the judicial proceedings." Callies, 21 Stetson L.Rev. at 889.
*476 The issue was addressed in Whispering Woods at Bamm Hollow, Inc., where Judge McGann declined to set aside a settlement of litigation arising from the Planning Board's denial of the property owner's subdivision application. He did so, not only recognizing the judicial policy favoring settlements, but also because the revised plan (incorporated into the settlement) was the subject of a public hearing before the Board, conducted pursuant to the MLUL. In dictum, the judge added the following pertinent observation:
It would be unthinkable that a Planning Board, for example, charged with the proper enforcement of local planning and zoning ordinances deny an application only to turn around and negotiate a final, binding approval of it in a modified form to settle the very litigation which ensued upon the denial. See Edelstein v. Asbury Park, above. If such a settlement could be final and binding that could be the hypothetical result. But it cannot be. The settlement must necessarily (as it was here) be conditioned upon a public hearing on the agreed plan  just as if a new application were being presented to the Board. In other words, any settlement must lead to a further official action by the public body. That action is subject to all of the statutory conditions necessary to vindicate the public interest  notice, public hearing, public vote, written resolution, etc. In addition, it is further subject to the complaint in lieu of prerogative writs.
... If the settlement must be made known to the public; subject to the public voice and voted upon in legal fashion, the public interest has been served. Under those circumstances if the settlement meets with public approval, unnecessary legal expenses of a full trial are saved. If the settlement is perceived to be illegal, the dissatisfied interested parties have their right to commence a prerogative writ suit, challenging the approval of the settlement.
[220 N.J. Super. at 172, 531 A.2d 770.]
Similarly, in Morris County Fair Housing Council v. Boonton Tp., 197 N.J. Super. 359, 373, 484 A.2d 1302 (Law Div. 1984), affd, 209 N.J. Super. 108, 506 A.2d 1284 (App.Div. 1986), Judge Skillman held that he had the power to issue a judicial compliance order based on a settlement reached by the parties in Mount Laurel[3] litigation, and that that settlement would be binding upon nonparties. The judge observed that the settlement reached by the *477 Public Advocate, developer and Township, had "sufficient apparent merit to justify scheduling a hearing to review its terms...." 197 N.J. Super. at 374, 484 A.2d 1302. He thereupon established a careful procedure calling for public notice and a hearing whereby any interested party could voice opposition to the proposal, and reserved the right, if necessary, to take testimony on the terms of the proposal. Ibid. Although Morris County Fair Housing Council deals with the specifics of Mount Laurel litigation, and not the traditional suit challenging a municipal ordinance under Rule 4:69, it recognizes the broader principle that land use litigation may in some instances be settled, subject to a hearing with public participation and judicial review of the settlement terms.

III
The question of whether Rule 4:69 should be amended to allow settlement of prerogative writs litigation is presently before a subcommittee of the Supreme Court Committee on Civil Practice. According to a recent notice of public hearing, the subcommittee is considering a proposal to amend the rule which "would permit actions described in R. 4:69-6(b)(3) or actions challenging a municipal ordinance or master plan to be settled only upon the approval of the court after consideration of the public interest involved, among other factors." (Emphasis added).
Settlement of land use litigation with court approval was also the subject of a recent law review article. Cohen, Wolfson, Meehan DalCortivo, 23 Seton Hall L.Rev. at 844. There, the authors, after reviewing the uneven treatment given by the courts in this and other jurisdictions of the settlement issue, discussed alternative means of accommodating the competing interests involved in land use litigation, including a "fairness hearing" approach. Under the "fairness hearing" format, the trial judge must first determine that the proposed settlement does not result in substantial detriment to the public, and is not "illegal or void as against public policy[.]" Id. at 865. The judge would then *478 conduct a hearing "similar to the public hearings held prior to board action." Id. at 864.
Members of the public could comment for or against the settlement. Participants could call witnesses or present other forms of evidence regarding the advisability of approving the settlement. Those favoring this approach deem it essential that members of the public be given notice and an opportunity to be heard. A fairness hearing, affording limited intervention to present arguments or to appeal an approved settlement, seeks to balance competing concerns. Intervention is permitted, but only to determine the settlement's fairness, not to allow the intervenor to compel a full adjudication of the case's merits.
[Ibid. (footnotes omitted).]
Prior to acceptance of any agreement to dismiss the litigation, the trial judge "would ascertain the nature and extent to which the litigation's adjudication or dismissal implicates public interests," ibid, and would reserve the right to "permit, or even guide, the parties to renegotiate specific areas of concern." Id. at 865. Finally, the trial judge is empowered, if necessary, to refer the matter to the appropriate municipal body for necessary action "to implement the settlement," retaining jurisdiction. Ibid.

IV
Warner and the Township first argue that the amended consent order is valid and enforceable, even without a "fairness hearing" before the Law Division judge, because the public interest was vindicated when the settlement terms were discussed at public hearings conducted by the Planning Board and Township Committee before the amended consent order was entered.
However, there is no indication in the record that settlement of the Warner litigation was ever discussed at a public meeting prior to entry of the original consent order on June 24, 1991. Attorneys for the parties had prepared the comprehensive settlement document and it was discussed by the Board and Township Committee, for the most part, during executive sessions. Also, prior to the entry of both the original and amended consent orders, the settlement document itself was apparently not made available for public inspection. Cf. N.J.S.A. 40:49-2.1 (passage of amendment to zoning ordinance must meet procedure requirements, including *479 published notice that the ordinance is on file for public examination).
After the Planning Board had expressed its disagreement with the original order, the Township Committee conducted public meetings on July 18 and August 1, 1991. It is true that the terms of the settlement were outlined during those meetings, and also that members of the general public had an opportunity to voice their objections to it.
Nevertheless, for the most part discussions centered around the Township's potential liability if it did not settle, the substantial cost of litigating the matter with Warner to its conclusion and the cost incurred to date in "finalizing a settlement." When various members of the public pressed their concerns respecting adverse environmental impact, council members observed that "the agreement is a done deal" and "[n]ow, certain people want to become Monday night quarterbacks after the fact." At no time during any of these hearings did either the Planning Board or Township Committee review the settlement terms in the context of the land use and housing elements of the Township's Master Plan. See N.J.S.A. 40:55D-62.
After the public hearings the Planning Board and governing body discussed refinements of the settlement in executive session and, at a 7:15 a.m. emergency executive meeting conducted on August 22, 1991, the Township Committee authorized its attorney to execute the amended consent order on that day. Clearly, these meetings did not provide the public a meaningful opportunity to discuss the settlement terms in detail.
Moreover, there was no judicial procedure by way of a "fairness hearing" or otherwise, before the August 22, 1991 amended consent order was entered by the Law Division judge. Nor was there any judicial review of the settlement of any kind before it was memorialized by final judgment. Consequently, Warner was granted a perpetual mining license and the C-25 zone was altered substantially without adherence to the MLUL and without consideration of the "fairness" of the settlement terms. As such, the *480 settlement constituted unlawful contract zoning, and the "consent judgment will not breathe legal life into it." Midtown Properties, Inc., 68 N.J. Super. at 206, 172 A.2d 40.

V
Nevertheless, it may be contrary to the best interests of all parties, including the public, simply to vacate the amended consent order and remand for trial of Warner's underlying suit. Warner's and the Township's position is that, if the amended consent order is vacated by us, they would press for a remand to the Law Division judge for a "fairness hearing," after which the judge would accept, modify or reject the settlement terms. Warner would resist remand to the governing body for legislative action to implement the settlement because of the unpredictable nature of the political process.
We reject Warner's and the Township's suggested approach for a variety of reasons. First, there is presently no court rule or other Supreme Court guidance as to the parameters of such a fairness hearing. Second, at least in the present case, we believe that a fairness hearing conducted by the Law Division judge would be cumbersome and problematic.
For example, the proposal to amend Rule 4:69 submitted to the Committee on Civil Practice would permit judicial settlement of prerogative writs actions only "after consideration of the public interest involved, among other factors." Does that mean that the judge must consider such factors as the merits of Warner's claims in the underlying suit, the viability of the Township's defenses, the length and complexity of underlying trial, the attendant cost and expenditure of judicial resources? Is the judge also to weigh the degree of public opposition to the settlement? See Cohen, Wolfson, Meehan DalCortivo, 23 Seton Hall L.Rev. at 866-67. These factors were considered relevant in Tabaac v. City of Atlantic City, 174 N.J. Super. 519, 417 A.2d 56 (Law Div. 1980), where Judge Haines, with the aid of his own experts and after public hearings conducted by him, approved a settlement of a taxpayer's *481 suit which challenged a sublease by the public body of a city parking lot to a hotel-casino.
However, in Tabaac, the issue was the reasonableness of a monetary settlement, and thus lent itself to resolution by consideration of these factors. Here, the present matter involves substantial alterations to a zoning ordinance. It allows, in a wholesale fashion, all industrial uses permitted in the M-2 zone, as well as those uses added to that zone in the future. It permits up to 300 residential units on a designated 250-acre site, a density ratio at least of one unit to ten acres (since the total acreage of Warner's tract is 3,000), substantially at variance with the one-unit per twenty-five acre ratio provided for in the C-25 zone. Deviations from the density standards are granted by the zoning board of adjustment under N.J.S.A. 40:55D-70d(5). See Commercial Realty & Resources Corp. v. First Atlantic Properties Company, 122 N.J. 546, 561, 585 A.2d 928 (1991).[4] The Zoning Board is not a party to this litigation. Therefore, any addition of permitted uses or relaxation of the aggregate density must be accomplished by the Township's governing body by amendment to the zoning ordinance, or by a special reasons variance granted by the Zoning Board.[5]
Because of the substantial changes in the present zoning standards envisioned by the settlement, zoning and planning principles and procedural safeguards devised by the MLUL are clearly implicated. To be "fair" the settlement must therefore be examined in the context of those principles and in accordance with *482 those statutory procedures. Otherwise, the public will be shortchanged.
For the Law Division judge here to conduct a hearing in accordance with the MLUL, he must assume the role of "an ad hoc super zoning legislature," a role not well suited to the judiciary. Pascack Ass'n, Limited v. Mayor & Council of Tp. of Washington, 74 N.J. 470, 487-88, 379 A.2d 6 (1977). After appropriate public notice of the hearing, any member of the public could appear and comment. Testimony may be taken from experts or any other witness concerning the desirability of the settlement in the context of zoning and planning principles. The newly-created permitted uses and density ratios must be measured against the Township's present land use and housing element plans. Other local agencies may have input. If the settlement is approved, the Law Division judge would be called upon to articulate why and how the settlement was consistent with the purposes of zoning and, if it deviated from the Master Plan, to explain justification for such a deviation. N.J.S.A. 40:55D-62a.
Moreover, once the order approving the settlement is entered, will any member of the public with standing, even if he or she did not appear at the hearing, have a right to appeal? What will be the scope of review? Will we give deference to the Law Division judge's findings of fact as is typically so in nonjury cases? Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974). Will there be a presumption of validity to the "rezoning," accomplished by the judge's approval of the settlement, which cannot be overcome on appeal absent an affirmative showing of arbitrariness or unreasonableness? Riggs, 109 N.J. at 610-11, 538 A.2d 808; Lusardi, 86 N.J. at 226, 430 A.2d 881. Such a presumption is traditionally reserved to the actions of local officials "who are thoroughly familiar with their community's characteristics...." Ward v. Scott, 16 N.J. 16, 23, 105 A.2d 851 (1954); see also, Bartlett v. Middletown, 51 N.J. Super. 239, 265, 143 A.2d 778 (App.Div.) (although Justice Jacobs, in Ward v. Scott, "was speaking there of a variance, what he said is even more appropriate *483 when applied to the township's legislative action in amending its zoning ordinance"), certif. denied, 28 N.J. 37, 144 A.2d 907 (1958). We do not intend in any way to denigrate the spirit of the fairness hearing concept. We simply conclude that the concept may be unworkable in this case.
In reviewing the settlement proposal, the proper role of the Law Division judge should be to provide judicial oversight rather than to be a "super zoning legislature." The judge should first make a threshold finding as to whether any of the settlement terms (aside from those which change the permitted uses and density ratios) are illegal or void as against public policy. Cohen, Wolfson, Meehan DalCortivo, 23 Seton Hall L.Rev. at 864. For example, intervenors charge that some provisions of the settlement unlawfully foreclose the Township's right to ever challenge or regulate future operation of Warner's mining activity. We do not now address intervenors' specific challenges, except to observe that a municipality may not surrender by agreement the prospect of exercising its police power if the public good and general welfare demand such action in the future. V.F. Zahodiakin Eng'g Corp., 8 N.J. at 394, 86 A.2d 127.[6] The Law Division judge must scrutinize the settlement and invalidate any provision under which the Township has bargained away its legislative power to zone or regulate in the future.
The Law Division judge should then remand to the governing body, retaining jurisdiction, for amendment to the Township's zoning ordinance for the purpose of implementing the settlement terms. It is worth repeating that such action is necessary because *484 the settlement alters the density and permitted use provisions of the C-25 zone, and did so without adherence to the procedural due process and land use requirements of the pertinent statutes. N.J.S.A. 40:49-1 to -2.1; N.J.S.A. 40:55D-1 to -92. Proper hearings by the Township will afford interested parties a familiar and convenient forum in which to express their views. The changes demand nothing short of legislative action.
[A] zoning ordinance is the solemn legislative act of a municipality acting through its governing body, and directly or indirectly affecting all residents and taxpayers in the community. It can be enacted only after introduction, submission to and report by the planning board, public hearing, and a formal vote of adoption, accompanied by the necessary publications.
[Borough of Leonia v. Borough of Fort Lee, 56 N.J. Super. 135, 144, 151 A.2d 540 (App.Div. 1959).]
If the amended zoning ordinance is not adopted by the Township, Warner may proceed to trial of its underlying suit. If the ordinance is adopted, and a member of the public having standing files a timely motion to intervene for the purpose of challenging it, the Law Division judge must decide whether the ordinance is sustainable as a valid exercise of the Township's zoning power. At this point, of course, the ordinance will enjoy a presumption of validity. Riggs, 109 N.J. at 610-11, 538 A.2d 808; Cohen, Wolfson, Meehan DalCortivo, 23 Seton Hall L.Rev. at 869.
Our result here does not, of course, pass judgment on the "fairness" of the settlement from a zoning and planning point of view. It may very well be determined that the proposal is sound and will advance one or more of the purposes of zoning as set forth in the MLUL. N.J.S.A. 40:55D-2. However, that determination, in the first instance, is for the governing body to make after public hearings are conducted.
We reverse, vacate the amended consent order and remand for further proceedings.
NOTES
[1] We granted appellants-intervenors the right to intervene for purposes of challenging the amended consent order on appeal. See Warner Company v. Sutton, 270 N.J. Super. 658, 637 A.2d 960 (App.Div. 1994).
[2] Unlike "contract zoning," there is no legal impediment to a development agreement between a municipality and a property owner which provides for rezoning of certain tracts to accommodate a particular residential plan. See Cox, § 34-8.2 at 523-24. Cox observes that:

There would appear to be no reason why such agreements should be ultra vires so long as (1) all negotiations and decisions with respect to the rezoning or ordinance amendments were taken at public meetings of the governing body and (2) all statutory requirements relating to the amendment to the master plan and adoption of amending ordinances were properly followed. See Landau v. Township of Teaneck, 231 N.J. Super. 586 [555 A.2d 1195] (Law Div. 1989).
[Ibid.]
[3] Southern Burlington Cty. N.A.A.C.P. v. Township of Mount Laurel, 67 N.J. 151, 336 A.2d 713, appeal dismissed and cert. denied, 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975); Southern Burlington Cty. N.A.A.C.P. v. Township of Mount Laurel, 92 N.J. 158, 456 A.2d 390 (1983).
[4] Although the Planning Board may be authorized, by a planned development ordinance, to vary the density "within a section ... of [the] development," N.J.S.A. 40:55D-39c(4), it has no power to increase the aggregate density allowed by the zoning ordinance.
[5] The Zoning Board would not have jurisdiction to grant a variance as to density if the grant will substantially affect "the essential land use scheme of the entire district...." Township of Dover, 158 N.J. Super. at 412, 386 A.2d 421. In that event, legislative action by the governing body is necessary. Id. at 412-13, 386 A.2d 421.
[6] The settlement also defines the area where Warner may continue its nonconforming mining activity, and provides that it shall not be deemed abandoned without written confirmation of that fact by Warner. Ordinarily, the zoning board has exclusive jurisdiction to fix the scope and intensity of a nonconforming use. N.J.S.A. 40:55D-68; N.J.S.A. 40:55D-70d(2). However, if the mining activity is redefined by the proposed amendatory ordinance as a permitted use on portions of the Warner tract, the necessity of zoning board review (if the ordinance is sustained) will be alleviated.