## CIRCUIT COURT OF KING GEORGE COUNTY

Pima Gro Systems, Inc.,
Crops, Inc.,
and Rodney Rollins

v.

King George County
Board of Supervisors

May 10, 2000

Case No. CH99-57

BY JUDGE WILLIAM H. LEDBETTER, JR.

The dispositive issue in this declaratory judgment action involves the enforceability of an agreement made by the County with an individual landowner, the plaintiffs' predecessor-in-interest, wherein the landowner was permitted to engage in activity prohibited by the County zoning ordinance.

For the reasons explained below, the court is of the opinion that the agreement is void and unenforceable.

### Facts

Pima Gro is in the business of removing treated sewage ("sludge" or "biosolids") from municipal treatment plants and applying it to agricultural land. There are two other plaintiffs: Crops, Inc., and Rodney Rollins. Crops also is in the business of applying biosolids to farmland and performs such work under contract for Pima Gro. Rollins is the president of Crops. He owns Dogue Farm, located in King George County.

Although biosolids can be transported by truck from municipal plants directly to farms, immediate application of the biosolids to the land is not

always feasible. Therefore, storage facilities are necessary so that when land application is prohibited or curtailed, the hauler will have somewhere to store the material until it can be applied to the land. Both the land application of biosolids and the storage of biosolids are regulated by federal and state authorities.

King George County adopted its zoning ordinance almost twenty years ago. That original ordinance allowed the application of biosolids on agricultural land with a conditional use permit. Nothing was said about storage or hauling.

In 1984, the County amended its ordinance to allow the application of biosolids on agricultural land as a matter of right, without the need of a use permit. Again, nothing was said about storage or hauling.

In 1987, the County again amended its zoning ordinance. Biosolids storage facilities were mentioned for the first time. A new provision, Section 4.6.2.3, authorized such a storage facility, but only for use on the farm upon which it was located. Transporting the material to any other location was expressly prohibited.

The County amended Section 4.6.2.3 in 1989. The amendment abolished biosolids storage facilities as a by-right use in agricultural zoning districts and instead required a special use permit for such storage facilities. The restriction on the use of those storage facilities to on-site application remained intact. In other words, the material could not be transported to any other location.

In 1991, Rollins applied for and received a special use permit for a biosolids storage facility on Dogue Farm. As provided by the ordinance, application of the biosolids stored in that facility was limited to Dogue Farm.

In 1993, Rollins asked the County to modify the conditions of his special use permit to allow off-site application of the biosolids stored at Dogue Farm. While Rollins' request was pending, the County repealed Section 4.6.2.3. Later, it rejected Rollins' request for modification of his special use permit.

On October 28, 1993, C & R Contractors, Inc., brought suit against the County, Case No. CH93-97, to have the repeal of Section 4.6.2.3 declared void.

At the time, C & R had contractual rights with respect to the use of the Dogue Farm biosolids storage facilities. Rollins had no proprietary interest in C & R, although he had owned the company in the 1980's.

In that litigation, C & R and the County reached an agreement. On December 19, 1994, the court entered a consent decree by the terms of which C & R not only was allowed to utilize the storage facilities on Dogue Farm, but also could haul the material from those storage facilities to other farms within a sixty-mile radius.

Less than a year later, C & R filed a petition under Chapter 11 of the Bankruptcy Act. In those proceedings, C & R sought and obtained permission of the bankruptcy court to sell assets, including its rights and obligations under the 1994 consent decree. Pima Gro purchased C & R's assets and sold them to Crops.

The County notified Pima Gro and Crops, that they would not be able to exercise any rights given to C & R in the consent decree.

Pima Gro and Crops then filed an adversary proceeding in the bankruptcy court, seeking a determination that C & R's rights in the consent decree were properly transferred by the sale. On December 16, 1997, the bankruptcy court declined to address the issue, deferring to the state courts.

In two prior cases, this court has touched upon but not decided the issue presented in this case.

In *Wheelabrator Clean Water System, Inc. v. King George County*, 43 Va. Cir. 370 (1997), the court held that off-site application of biosolids is prohibited by the zoning ordinance. The court also held that the 1994 agreement between C & R and the County did not deny Wheelabrator due process or equal protection of law.

In a precursor to this case, *Pima Gro Systems, Inc. v. King George County*, 47 Va. Cir. 356 (1998), the court determined that the plaintiff's operation violates the County zoning ordinance. That decision did not take into account the 1994 consent decree. The plaintiffs initiated this suit before anything further was decided in that case.

This case was tried without a jury on March 23, 2000. Most of the pertinent facts were stipulated. The parties submitted memoranda. The court took the matter under advisement.

*Decision*

The enactment of land use regulations, including zoning regulations, is an exercise of legislative power. These regulations are enacted pursuant to the police power of the State. It follows that authority to enact such regulations rests initially with the State. A local government has no inherent power to legislate zoning laws. That power exists by authority delegated from the State. In Virginia, the power to zone has been delegated to localities in Virginia Code § 15.2-2280 *et seq*.

Zoning is wholly legislative, and cannot be accomplished in any fashion other than by an appropriate ordinance. *Laird v. City of Danville*, 225 Va. 256, 302 S.E.2d 21 (1983).

Local government has no authority to enter into a private agreement with a property owner to amend the zoning ordinance, thereby contracting away its police power. An agreement made to zone or rezone for the benefit of an individual landowner is generally illegal. It is an *ultra vires* act bargaining away the police power. Zoning must be governed by the public interest and not by benefit to a particular landowner. 83 Am. Jur. 2d, *Zoning and Planning*, § 46.

This was the rationale used by the court in *Warner Co. v. Sutton*, 274 N.J. Super. 464, 644 A.2d 656 (N.J. Super. Ct. App. Div. 1994), cited by the County. There, the locality and a landowner were involved in litigation over "spot zoning." By the terms of a consent decree, the locality agreed to allow the landowner to continue a mining operation that was prohibited in that district under the zoning ordinance. The court held that the consent decree was void. A local government must exercise its police power to serve the common good and general welfare, and may not surrender it or bargain it away, the court said. Use of the police power cannot be controlled by the considerations which enter into the law of contracts, the court observed.

This court agrees with the reasoning of the New Jersey court and with the authorities cited in 83 Am. Jur. 2d § 46. If local government could change its zoning laws by private agreements with individual landowners, a hodgepodge of regulations would develop, the legislative process would be usurped, and the public good would be compromised. See also Rezoning — Special Restrictions, 70 A.L.R.3d 125, § 15 (1976).

In this case, the County did not just agree to rezone a landowner's property — an act which of itself is generally illegal as "contract zoning." Rather, the County actually agreed to allow activity on Dogue Farm that was (and still is) prohibited to all others under the zoning ordinance. The agreement, once incorporated in a consent decree, was self-executing. The County did nothing to amend or revise the zoning ordinance. In effect, the agreement allowed C & R to conduct activity that was illegal pursuant to a valid ordinance properly adopted by the County exercising police powers specifically delegated to it by the state legislature.

The County had no power or authority to make such an agreement. (See, by contrast, *Mumpower v. Housing Auth.*, 176 Va. 426, 11 S.E.2d 732 (1940), where the City did not surrender police power but merely acknowledged a legal right of the housing authority under the law.)

Contracts beyond the power of local government are void. The power of local government depends wholly upon organic law and statutory law, and every person who deals with such a body, or its officials, is bound to know the extent of its authority and the limitations of its powers. *York County v. King's*

*Villa*, 226 Va. 447, 309 S.E.2d 332 (1983); also see 56 Am. Jur. 2d, *Municipal Corporations*, § 503.

Therefore, the agreement is void and unenforceable. The outcome is not altered by the fact that the agreement was incorporated into a consent decree. If an agreement is null and void, having it incorporated into a consent decree will not breathe life into it.

Further, the doctrines of ratification, estoppel, and waiver do not benefit the plaintiffs. The courts have held repeatedly that these concepts have no application to absolutely void, *ultra vires*, acts of public officials. See *King's Villa, supra; Westminster-Canterbury v. City of Virginia Beach*, 238 Va. 493, 385 S.E.2d 561 (1989).

Finally, the plaintiffs have filed a "plea in bar and estoppel," contending that the County should not be able to assert that the 1994 consent decree is void because their pleadings do not raise the defense, because the consent decree can be set aside only on an original bill filed for that purpose, and because pre-litigation actions of the County officials did not raise the issue.

For many of the reasons already discussed, the plea must be denied. The County's agreement with C & R was void *ab initio*. As noted, the fact that it was incorporated into a consent decree does not alter the outcome. Also, the passage of time and actions taken or words spoken by County officials do not change the result.

With respect to the pleadings, the court is of the opinion that the County's general denial suffices to entitle it to raise the point.

## Conclusion

The agreement reached between the County and C & R in 1994 is void *ab initio* and unenforceable. Consequently, the consent decree is of no binding effect.

In view of the position the court takes on this threshold issue, the court need not address other issues raised in this litigation.