197 N.J. Super. 359 (1984)
484 A.2d 1302
MORRIS COUNTY FAIR HOUSING COUNCIL, ET AL., PLAINTIFFS,
v.
BOONTON TOWNSHIP, ET AL., DEFENDANTS.
CHARLES DEVELOPMENT CORP., PLAINTIFF,
v.
TOWNSHIP OF MORRIS, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division Morris County/Middlesex County.
Decided May 25, 1984.
*362 Stephen M. Eisdorfer, Assistant Deputy Public Advocate, for plaintiffs Morris County Fair Housing Council, et al (Joseph H. Rodriguez, Public Advocate, attorney).
Guliet F. Hirsch for plaintiff Charles Development Corp. (Brener, Wallack & Hill, attorneys).
John M. Mills for defendant Township of Morris (Mills, Hock, Dangler & Mills, attorneys).
James R. Hillas, Jr. for defendant Planning Board of Township of Morris.
Martin Gelber for objector Hubschman (Gelber & Kruvant, attorneys).
Daniel S. Bernstein for defendant Chatham Township (Bernstein, Hoffman & Clark, attorneys).
SKILLMAN, J.S.C.
This motion presents significant issues regarding the procedures to be followed in the settlement of Mount Laurel litigation when the entry of a "judgment of compliance" is a precondition of a municipal defendant's willingness to settle.
*363 This suit was filed by the Public Advocate on behalf of himself, the Morris County Fair Housing Council and the Morris County branch of the N.A.A.C.P., against twenty-seven municipalities in Morris County alleged to have zoning ordinances which are unconstitutional because they fail to provide a realistic opportunity for the construction of low and moderate income housing. See Borough of Morris Plains v. Dep't of Public Advocate, 169 N.J. Super. 403 (App.Div. 1979), certif. den. 81 N.J. 411 (1979). The Public Advocate dismissed its action, without prejudice, against fifteen of the original defendants, while continuing to proceed against twelve others.
Morris Township is one of the remaining defendants. It is also the defendant in two separate Mount Laurel actions brought by developers.
Morris Township has reached a proposed settlement with the Public Advocate and one of the developers, Charles Development Corporation. However, Morris Township's willingness to settle is contingent upon the court approving the settlement and entering a judgment of compliance. As envisioned by the parties to the settlement, such approval would represent a judicial recognition that Morris Township has taken the steps required to comply with Mount Laurel and it would have the practical effect of foreclosing the second developer, Hubschman, from pursuing his Mount Laurel claim. The matter has been brought before the court by the three parties to the settlement agreement on a joint motion to establish procedures for review of the settlement by the court.
The Supreme Court of New Jersey has adopted a special rule of repose which becomes operative when a municipality rezones as a result of Mount Laurel litigation. The rationale for this special rule is set forth in Southern Burlington Cty. N.A.A.C.P. v. Mount Laurel Tp., 92 N.J. 158 (1983) (Mount Laurel II):
That balance [of all the policies involved in the Mount Laurel doctrine] also requires modification of the role of res judicata in these cases. Judicial determinations of compliance with the fair share obligation or of invalidity are *364 not binding under ordinary rules of res judicata since circumstances obviously change. In Mount Laurel cases, however, judgments of compliance should provide that measure of finality suggested in the Municipal Land Use Law, which requires the reexamination and amendment of land use regulations every six years. Compliance judgments in these cases therefore shall have res judicata effect, despite changed circumstances, for a period of six years, the period to begin with the entry of the judgment by the trial court. In this way, municipalities can enjoy the repose that the res judicata doctrine intends, free of litigious interference with the normal planning process. [at 291-292; footnote omitted]
This passage from Mount Laurel II does not expressly state that a judgment of compliance shall be binding upon non-parties. However, this seems to have been the Court's intent. There often will be numerous property owners in a municipality with land suitable for lower income housing as well as various organizations which may pursue Mount Laurel litigation on behalf of lower income persons. Therefore, if a judgment of compliance entered at the conclusion of Mount Laurel litigation were binding only upon the party who had filed the action, such a judgment would afford a municipality very limited repose. Yet, the Court said that upon issuance of a judgment of compliance a municipality would be "free of litigious interference with the normal planning process." Id. at 292. This degree of insulation from Mount Laurel claims can be realized only if a judgment of compliance is binding upon non-parties.
Furthermore, this reading of Mount Laurel II is consistent with the effect given judgments in other representative litigation. Although the general black letter law is that a judgment is binding only upon the parties (1 Restatement, Judgments 2d, § 34(3) at 345 (1982)), a judgment may be binding upon non-parties if their interests have been represented by a party. Id. § 41(1) at 393. One widely recognized form of action in which a judgment may be binding upon non-parties is a traditional class action. Id. § 41(1)(e); see Penson v. Terminal Transport Co., 634 F.2d 989, 992 (5 Cir.1981); Telephone Workers Union Local 827 v. New Jersey Bell Telephone Co., 584 F.2d 31, 34 (3 Cir.1978); Harker v. McKissock, 12 N.J. 310, 317 (1953). A second is a suit by a public official or agency *365 which is authorized by law to represent the public or a class of citizens. 1 Restatement, Judgments 2d, § 41(1)(d) at 393 (1982); see Nevada v. United States, 463 U.S. 110, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983); Southwest Airlines Co. v. Texas International Airlines, Inc., 546 F.2d 84, 94-102 (5 Cir.1977) cert. den. 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977); Rynsburger v. Dairymen's Fertilizer Coop., Inc., 266 Cal. App.2d 269, 72 Cal. Rptr. 102 (Ct.App. 1968). Another is a taxpayers' action brought on behalf of residents, citizens and taxpayers of a jurisdiction. Roberts v. Goldner, 79 N.J. 82 (1979); In re Petition of Gardiner, 67 N.J. Super. 435, 447-449 (App.Div. 1961). Non-parties may be bound in a variety of other contexts as well. See Southwest Airlines Co. v. Texas International Airlines, Inc., supra. Indeed, in Rynsburger v. Dairymen's Fertilizer Coop., Inc., supra, the court broadly stated that "[i]f it appears that a particular party, although not before the court in person, is so far represented by others that his interest received actual and efficient protection, the decree will be held to be binding upon him." 266 Cal. App.2d at 278, 72 Cal. Rptr. at 107.
A Mount Laurel case may be appropriately viewed in line with these authorities as a representative action which is binding upon non-parties. The constitutional right protected by the Mount Laurel doctrine is the right of lower income persons to seek housing without being subject to the economic discrimination caused by exclusionary zoning. Mount Laurel II, 92 N.J. at 208-214; see Pascack Ass'n, Ltd. v. Washington Tp., 74 N.J. 470, 480 (1977). The Public Advocate and organizations such as the Fair Housing Council and N.A.A.C.P. have standing to pursue Mount Laurel litigation on behalf of lower income persons. Mount Laurel II, 92 N.J. at 336-338; Home Builders League v. Berlin Tp., 81 N.J. 127, 132-133 (1979). Developers and property owners with land suitable for lower income housing are also conferred standing to pursue Mount Laurel litigation. See Mount Laurel II, 92 N.J. at 279-281. In fact, the Court held that "any individual demonstrating an interest in, or *366 any organization that has the objective of, securing lower income housing opportunities in a municipality will have standing to sue such municipality on Mount Laurel grounds." Id. at 337. However, such litigants are granted standing not to pursue their own interests, but rather as representatives of lower income persons whose constitutional rights allegedly have been violated by exclusionary zoning. It follows that a judgment of compliance entered as a result of Mount Laurel litigation would be binding upon non-party lower income persons as well as other potential representatives of their interests such as Hubschman.
The second issue presented by this motion is whether a judgment of compliance can be entered as part of a court approved settlement or only after a full trial in which there has been an adjudication of the validity of a zoning ordinance on Mount Laurel grounds. None of the six cases decided by the Supreme Court in Mount Laurel II provided the occasion for consideration of this issue.
Our courts have long endorsed the policy of encouraging the settlement of litigation. Judson v. Peoples Bank & Trust Co., 25 N.J. 17, 35 (1957); Honeywell v. Bubb, 130 N.J. Super. 130, 136 (App.Div. 1974). Settlements permit parties to resolve disputes on mutually acceptable terms rather than exposing themselves to the adverse judgment of a court. Settlements also save parties litigation expenses and facilitate the administration of the courts by conserving judicial resources.
These policies favoring settlement are operative in Mount Laurel litigation. The Court observed in Mount Laurel II that "[t]he length and complexity of [Mount Laurel] trials is often outrageous, and the expense of litigation is so high that a real question develops whether the municipality can afford to defend or the plaintiffs can afford to sue." 92 N.J. at 200. Consequently, the Court expressed a desire "to simplify litigation in this area" and "to encourage voluntary compliance with the constitutional obligation." Id. at 214. In a similar spirit, it *367 said that "the Mount Laurel obligation is to provide a realistic opportunity for housing, not litigation." Id. at 352. The settlement of Mount Laurel litigation is a mechanism for addressing these concerns; it will avoid trials, save litigation expenses, provide a vehicle for consensual compliance with Mount Laurel and result in the construction of housing for lower income persons rather than interminable litigation.
Moreover, it appears that entry of a judgment of compliance frequently will be a precondition to settlement of Mount Laurel cases. Municipalities are understandably hesitant to rezone or to take other affirmative steps to comply with Mount Laurel if their zoning will remain vulnerable to attack. They want assurance that whatever expenses may be incurred in complying with Mount Laurel will be offset, at least in part, by savings in litigation expenses. Municipalities also seek the opportunity to engage in the long term planning required to implement compliance with Mount Laurel  including the addition of necessary water and sewer service, police and fire protection, schools, parks and streets  without fear that those plans will have to be changed as a result of new litigation.
While there are substantial considerations favoring settlement of Mount Laurel litigation, it also must be recognized that the improvident entry of a judgment of compliance would be harmful to the lower income persons on whose behalf the litigation is brought. As noted previously, such a judgment ordinarily will insulate a municipality from further Mount Laurel litigation for a period of six years. Therefore, there must be assurance that a settlement is consistent with the best interests of lower income persons before a judgment of compliance is issued.
The risks of improvidently approving a settlement and issuing a judgment of compliance are most acute in Mount Laurel litigation brought by developers. A plaintiff developer and defendant municipality have complementary objectives in settlement negotiations which are likely to result in an agreement *368 which does not advance the goals of Mount Laurel. A municipality's objective is to be assigned a small fair share of lower income housing. A developer's objective is to secure approval of his project. If a judgment of compliance is entered approving a settlement which advances both of these objectives, the result would be the construction of a small number of lower income housing units while insulating the municipality from further Mount Laurel litigation for six years.
The danger of entering a judgment of compliance which does not adequately protect the interests of lower income persons is substantially reduced when a Mount Laurel claim has been brought by the Public Advocate or other public interest organization, since it may be assumed that generally a public interest organization will only approve a settlement which it conceives to be in the best interests of the people it represents. However, even a public interest organization may incorrectly evaluate the strengths and weaknesses of its claim or be overly anxious to settle a case for internal organizational reasons.
The question is whether these dangers require that a judgment of compliance only be entered after a case has been fully litigated or whether procedures can be established by which the court can receive reasonable assurance that a proposed settlement will result in satisfaction of a municipality's Mount Laurel obligation. In addressing this question it is appropriate to consider the procedures which are used for the approval of settlements in class and other representative actions.
Rule 4:32-4 provides that "[a] class action shall not be dismissed or compromised without the approval of the court ...." To afford interested parties an opportunity to be heard, the rule further provides that "notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." Although R. 4:32-4 only applies by its literal terms to class actions, it has been found to contain appropriate "guiding principles" for settlement of other *369 representative lawsuits. Tabaac v. Atlantic City, 174 N.J. Super. 519, 534 (Law Div. 1980).
There is only limited discussion in New Jersey case law of the procedures to be followed in presenting proposed settlements of class actions for judicial approval and of the standards to be applied in determining whether approval should be given. See City of Paterson v. Paterson General Hospital, 104 N.J. Super. 472 (App.Div. 1969), aff'd 53 N.J. 421 (1969); see also New Jersey State Bar Ass'n v. New Jersey Ass'n of Realtor Bds., 186 N.J. Super. 391 (Ch.Div. 1982), mod. 93 N.J. 470 (1983). However, R. 4:32-4 was taken from and is identical to Fed.R. Civ.P. 23(e). See 2 M. Schnitzer & J. Wildstein, N.J. Rules Service at 1160-1166 (1959). Therefore, it is appropriate to seek guidance in federal case law in determining the procedures and standards for approval of settlements of representative actions. Cf. Riley v. New Rapids Carpet Center, 61 N.J. 218 (1972) (primary reliance placed upon federal precedents in determining maintainability of a class action).
There is a set of well-established procedures which govern the approval of proposed settlements of class actions in the federal courts. See generally 3B J. Moore & J. Kennedy, Moore's Federal Practice ¶ 23.80 (2 ed. 1982); 7A C. Wright & A. Miller, Federal Practice and Procedure, § 1797 (1972); Manual for Complex Litigation § 1.46 (5 ed. 1982). First, the court must make a preliminary determination that the proposed settlement has sufficient apparent merit to justify scheduling a hearing to review its terms. Second, a formal notice approved by the court must be given to all members of the class and others who may have an interest in the settlement. Third, sufficient time must be allowed class members and other interested parties to prepare documentary material and/or oral testimony in opposition to the proposed settlement. Fourth, a hearing must be held. Fifth, the court must reach a conclusion, based upon adequate findings of fact, that the settlement is "fair and reasonable" to the members of the class.
*370 The hearing on the proposed settlement is not a plenary trial and the court's approval of the settlement is not an adjudication of the merits of the case. Armstrong v. Milwaukee Bd. of School Directors, 616 F.2d 305, 314-315 (7 Cir.1980); Flinn v. FMC Corp., 528 F.2d 1169, 1172 (4 Cir.1975), cert. den. 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 734 (1976). Rather, it is the court's responsibility to determine, based upon the relative strengths and weaknesses of the parties' positions, whether the settlement is "fair and reasonable," that is, whether it adequately protects the interests of the persons on whose behalf the action was brought. Armstrong v. Milwaukee Bd. of School Directors, supra; Cotton v. Hinton, 559 F.2d 1326, 1330 (5 Cir.1977). Moreover, the nature and extent of the hearing required to determine whether the settlement is "fair and reasonable" rests within the sound discretion of the court. Cotton v. Hinton, supra at 1331; Patterson v. Stovall, 528 F.2d 108 (7 Cir.1976); Flinn v. FMC Corp., supra at 1173.
It is noteworthy that the federal courts have utilized these procedures in approving settlements of school desegregation, employment discrimination and other class actions involving fundamental constitutional and civil rights. See, e.g., Penson v. Terminal Transport Co., supra; Mendoza v. United States, 623 F.2d 1338 (9 Cir.1980), cert. den. 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981); Armstrong v. Milwaukee Bd. of School Directors, supra. The court in Armstrong observed that "there are no suggestions that the importance of the substantive rights involved precludes compromise or requires a special standard of review." Id. at 317.
This court is satisfied that it can adequately safeguard against judgments of compliance being entered improvidently as a result of Mount Laurel litigation through the use of procedures similar to those used by the federal courts for the *371 approval of proposed settlements of class actions.[1] Notice of the terms of the settlement to the public, public interest organizations and property owners who want to construct lower income housing will provide an adequate opportunity to be heard to any party who opposes the settlement. Furthermore, if the court concludes that the presentation of the parties and any others who seek to be heard is not adequate to determine whether the proposed settlement is "fair and reasonable," it may appoint an advisory master to make recommendations.[2]See Mount Laurel II, 92 N.J. at 283. If the material presented to the court fails to establish that the settlement is "fair and reasonable," it can disapprove the settlement or require the submission of additional information.
It is not practical to catalogue definitively the factors which will be relevant to the court's review of a proposed settlement of a Mount Laurel case. However, the court rejects the argument made by the objector, Hubschman, that no settlement entailing entry of a judgment of compliance may be approved without first determining the precise fair share of the defendant municipality. The Court pointed out in Mount Laurel II that fair share determinations are the most time consuming and difficult part of Mount Laurel litigation:
The most troublesome issue in Mount Laurel litigation is the determination of fair share. It takes the most time, produces the greatest variety of opinions, and engenders doubt as to the meaning and wisdom of Mount Laurel. Determination of fair share has required resolution of three separate issues: identifying the relevant region, determining its present and prospective housing needs, and allocating those needs to the municipality or municipalities involved. Each of these issues produces a morass of facts, statistics, projections, theories and *372 opinions sufficient to discourage even the staunchest supporters of Mount Laurel. The problem is capable of monopolizing counsel's time for years, overwhelming trial courts and inundating reviewing courts with a record on review of superhuman dimensions. [at 248]
Therefore, requiring a fair share determination before approving a settlement would be inconsistent with the basic purposes of settlement of a Mount Laurel case, which are to save the parties litigation expenses, to conserve judicial resources and to facilitate the early construction of lower income housing rather than interminable litigation.
The conclusion that a judgment of compliance may be entered without making a fair share determination does not mean that information relating to fair share is irrelevant in reviewing a proposed settlement. To the contrary, the range of possible fair shares which the court might allocate to a municipality if the case were fully litigated ordinarily will be a significant consideration. See Protective Comm. v. Anderson, 390 U.S. 414, 424-425, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968); Armstrong v. Milwaukee Bd. of School Directors, supra, 616 F.2d at 314. There are a number of other factors which also should be taken into consideration, such as the anticipated time it would take to conclude the litigation if there were no settlement and whether the proposed settlement will result in the expeditious construction of a significant number of lower income housing units. The weight that may be assigned to any of these or other factors will depend upon the particular circumstances of the settlement proposal.
The objector, Hubschman, also argues that no judgment of compliance can be issued in settlement of the suits brought by the Public Advocate and Charles Development which would foreclose Hubschman's entitlement to a "builder's remedy" in his pending action against Morris Township. Although the Court stated in Mount Laurel II that "builder's remedies must be made more readily available to achieve compliance *373 with Mount Laurel" (92 N.J. at 279), it did not say that any developer who has a Mount Laurel action pending when a municipality rezones in compliance with Mount Laurel II may seek a builder's remedy. Rather, it held that generally the only developers entitled to seek a "builder's remedy" are ones which have "succeeded" in Mount Laurel litigation. Ibid. If the court concludes that the proposed settlement between the Public Advocate, Charles Development and Morris Township will bring Morris Township into compliance with Mount Laurel, Hubschman would not be in a position to "succeed" in his Mount Laurel action and hence could not seek a "builder's remedy." Therefore, a developer who has a separate Mount Laurel action pending may not exercise veto power over a proposed settlement between the municipality and other litigants by insisting upon his right to "builder's remedy."[3]See City of Paterson v. Paterson General Hospital, supra; cf. Penson v. Terminal Transport Co., supra, 634 F.2d at 996 ("A judgment or consent decree entered in a class action can bind the absent class member even though the member had filed a claim or instituted a personal suit before the decision in the class action.")
For these reasons the court is satisfied that it has the power to issue a judgment of compliance based upon a settlement negotiated between parties to Mount Laurel litigation which will be binding upon other parties, including parties with pending *374 actions, provided the procedures for judicial review outlined in this opinion are followed.
The court is also satisfied that the proposed settlement negotiated among the Public Advocate, Charles Development and Morris Township has sufficient apparent merit to justify scheduling a hearing to review its terms and that the procedures for the hearing proposed by the motion are appropriate. These procedures include notice of the terms of the proposed settlement in the form appended to this opinion. The notice will be published in two daily newspapers widely circulated in Morris County and neighboring counties as well as a local weekly. Direct notice by mail also will be given to the New Jersey Department of Community Affairs, the Morris County Planning Board and a variety of other organizations which may have an interest in lower income housing, as well as any developers who have pending Mount Laurel claims. The terms of the proposed settlement, together with its factual and legal justification, will be made available to any party who expresses an interest in being heard on the application for approval of the settlement. Any written objections must be filed within three weeks of the notice and a hearing will be held one week later. The court will determine after receiving all documentary material submitted in connection with the proposed settlement whether to take testimony on the proposal and, if so, what areas testimony should cover and how extensive it needs to be.

APPENDIX
 JOSEPH H. RODRIGUEZ, PUBLIC ADVOCATE
 DEPARTMENT OF THE PUBLIC ADVOCATE
 BY: STEPHEN EISDORFER
 ASSISTANT DEPUTY PUBLIC ADVOCATE
 DIVISION OF PUBLIC INTEREST ADVOCACY
 CN 850
 TRENTON, NEW JERSEY 08629
 (609) 292-1692

*375 Morris County Fair Housing Council, et al., Plaintiffs,

vs.

Boonton Township, et al., Defendants.

Charles Development Corp., Plaintiff,

vs.

Morris Township, et al., Defendants.

NOTICE OF PROPOSED SETTLEMENT
TO: All Interested Persons:
A hearing will be held on June 27, 1984 before the Honorable Stephen Skillman, Superior Court of New Jersey, at 9:00 a.m. in the Middlesex County Court House, New Brunswick, New Jersey to consider entry of a final judgment of compliance in favor of Morris Township, based upon a proposed settlement agreement which has been submitted to the Court.
Entry of a final judgment of compliance would declare Morris Township in compliance with its obligations to provide realistic opportunities for housing affordable to low and moderate income households under Southern Burlington County N.A.A.C.P. v. Mt. Laurel Township. Entry of a judgment of compliance may bar for six years any claim that Morris Township is failing to provide sufficient realistic housing opportunities for low and moderate income households.
In these lawsuits, plaintiffs claim that Morris Township's existing zoning and land use planning practices fail to provide adequate realistic opportunities for housing affordable to low and moderate income households to meet the needs of persons residing in Morris Township and to meet Morris Township's fair share of the present and prospective regional housing need.
Morris Township has denied these claims.
The parties have agreed to settle the case upon the following terms:
*376 1. Morris Township has an obligation between now and 1990 to create realistic opportunities for safe, decent housing affordable to low and moderate income households for 535 households.
2. Morris Township is to receive credit against this obligation for 101 units of publicly subsidized senior citizen housing constructed since 1980 and any additional publicly subsidized low and moderate income housing which may be constructed in the future.
3. The Township will rezone 11 designated sites (including property owned by plaintiff Charles Development Company) for garden apartments at a density of 16 units to the acre or townhouses at a density of 5 units to the acre. Development will be permitted at these densities on the condition that 20% of the units constructed will be marketed to low and moderate income households at prices affordable to such households and will be subject to resale price controls designed to ensure that such units will remain affordable for a period of thirty years. The Township has modified its design standards and waived certain fees to further facilitate construction of affordable housing. This provision will remain in effect until 335 units of housing affordable to low and moderate income families are constructed on these sites.
4. Morris Township will amend its zoning ordinances to permit creation of "supplemental apartments" in all single-family zones in the municipality, subject to certain design requirements. Morris Township is to receive credit for 100 units of housing affordable to low and moderate income households based on this amendment.
The full text of the proposed agreement including a map of the designated sites may be examined and copied during regular business hours at the Morris Township clerk's office, or by appointment at the offices of any of the following attorneys.
*377
 John Mills, Esquire
 Mills, Hock, Dangler & Mills
 One Western Avenue
 Morristown, New Jersey
 (201) 538-0950
 Guliet Hirsh, Esquire
 Brenner, Wallack & Hill
 2-4 Chambers Street
 Princeton, New Jersey
 (609) 924-0808
 Stephen Eisdorfer, Esquire
 Division of Public Interest Advocacy
 Department of the Public Advocate
 Hughes Justice Complex, CN 850
 Trenton, New Jersey
 (609) 292-1692
The legal and factual justification for the proposed settlement will be provided upon request directed to Stephen Eisdorfer, Esq. at the above address.
Any interested party, including any low or moderate income person residing in northern New Jersey, any organization representing the interests of low or moderate income persons, any owner of property in Morris Township, or any organization representing the interests of owners of property in Morris Township, may file objections to the proposed agreement and may present evidence in support of such objections. Objections must be filed in writing together with copies of any supporting affidavits or documents with the Honorable Stephen Skillman, Middlesex County Court House, New Brunswick, New Jersey 08903 on or before June 20, 1984. Copies must be filed with the Middlesex County Clerk, Middlesex County Court House, New Brunswick, New Jersey and each of the lawyers listed above.
This notice is promulgated by order of the Superior Court. It is intended to inform all interested parties of the existence of a proposed settlement and the possible consequences of court *378 approval of this settlement. It does not indicate any view by the Court as to the merits of the lawsuits, the fairness, reasonableness or adequacy of the proposed settlement, or whether the Court will approve the settlement or enter a judgment of compliance.
NOTES
[1] The court is not called upon by this motion to decide what role, if any, the court should play when parties to a Mount Laurel action reach a settlement which is not conditioned upon entry of a judgment of compliance.
[2] In fact, a master probably should be appointed as a matter of course in any case where a developer is the only party representing lower income persons.
[3] Other interested developers such as Hubschman may of course be heard in opposition to the proposed settlement. Hubschman may seek to demonstrate at the hearing that its lawsuit played a substantial part in bringing about the rezoning of Morris Township embodied in the proposed settlement and that consequently approval of the settlement would be inconsistent with the Court's "decision to expand builder's remedies," in order to "maintain a significant level of Mount Laurel litigation," "to compensate developers who have invested substantial time and resources in pursuing such litigation" and to ensure that "lower income housing is actually built." Mount Laurel II, 92 N.J. at 279-280. The weight to be assigned this factor in determining whether to approve a settlement will depend upon the facts of the particular case.