696 A.2d 25

OCEAN COUNTY CHAPTER INC. OF THE IZAAK WALTON LEAGUE OF AMERICA, A NONPROFIT CORPORATION, APPELLANT, v. THE DEPARTMENT OF ENVIRONMENTAL PROTECTION AND ENERGY AND LIFETIME HOMES OF NEW JERSEY, INC., A NEW JERSEY CORPORATION, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 13, 1997—Decided April 16, 1997.

2

Before Judges LONG, SKILLMAN and A.A. RODRIGUEZ.

*Michele R. Donato* argued the cause for appellant.

*Rachel Horowitz,* Deputy Attorney General, argued the cause for respondent Department of Environmental Protection (*Peter Verniero,* Attorney General, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel; *Ms. Horowitz,* on the brief).

*Richard M. Hluchan* argued the cause for respondent Lifetime Homes of New Jersey, Inc. (*Levin & Hluchan,* attorneys; *Mr. Hluchan,* of counsel and on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

Appellant Ocean County Chapter, Inc. of the Izaak Walton League of America appeals from a settlement between respondents Department of Environmental Protection (DEP) and Lifetime Homes of New Jersey, Inc. (Lifetime) regarding the delineation of wetlands on a 208 acre tract of land bordering on Barnegat Bay in Berkeley Township owned by Lifetime.

Lifetime proposes to construct a major residential development project on its property. Consequently, Lifetime began discussions with the United States Army Corps of Engineers (Army Corps) in 1986 regarding a wetlands delineation of its property. At that time, freshwater wetlands were regulated by the Army Corps pursuant to § 404 of the federal Clean Water Act, 33 *U.S.C.* § 1344, and were not subject to regulation by the DEP. Life-

time's consultants subsequently prepared a wetlands delineation using the methodology contained in the 1987 *Corps of Engineers Wetland Delineation Manual* (1987 Army Corps Manual), and submitted it to the Army Corps for approval. In February 1988, the Army Corps approved the delineation, noting that its approval was effective for two years.

On July 1, 1987, the Legislature enacted the Freshwater Wetlands Protection Act (FWPA), *N.J.S.A.* 13:9B–1 to –30. Under this legislation, the freshwater wetlands on Lifetime's property were subject to regulation by both the Army Corps and the DEP from July 1, 1988 until March of 1994, at which time the DEP assumed the regulatory jurisdiction previously exercised by the Army Corps and generally became the only regulator of freshwater wetlands within New Jersey. In performing this responsibility, the DEP uses the 1989 *Federal Manual for Identifying and Delineating Jurisdictional Wetlands* (1989 Federal Manual), which is more stringent than the 1987 Army Corps Manual.

In a pre-application conference letter dated August 27, 1990, the DEP advised Lifetime that it would accept the Corps' wetlands delineation "if development is not proposed within the wetlands or wetlands buffer area." The DEP also advised Lifetime to file an application for a letter of interpretation. Consequently, Lifetime applied to the DEP for a letter of interpretation verifying the freshwater wetlands delineation previously approved by the Army Corps in 1991. However, the DEP notified Lifetime that it could not accept the Army Corps determination because it was not based on the 1989 Federal Manual.

On April 3, 1991, Lifetime filed a petition with the Commissioner of the DEP for a declaratory ruling that the DEP is required to use the same wetlands delineation manual used by the Army Corps and to accept the wetlands delineation of Lifetimes' property previously adopted by the Army Corps. The petition noted that the DEP staff had utilized the 1989 Federal Manual rather than the 1987 Army Corps Manual in determining the extent of wetlands on the property. The petition also noted that after the

DEP staff refused to accept the Army Corps wetlands delineation, the Army Corps conducted another inspection of the site and reviewed additional monitoring data, as a result of which it reconfirmed the validity of its previous wetlands delineation. Appellant filed a brief in opposition to Lifetime's petition, arguing that the FWPA required the DEP to use the 1989 Federal Manual rather than the 1987 Army Corps Manual.

On June 24, 1993, Commissioner Weiner issued an order which denied the part of Lifetime's petition which sought to require the DEP to accept the Army Corps' wetlands delineation, noting that the DEP's staff had concluded that the wetlands line "appears to contain serious flaws." The Commissioner also rejected Lifetime's argument that the DEP was required to use the 1987 Army Corps Manual in delineating all wetlands. However, the Commissioner concluded that "based on the unique facts and circumstances" of this case, the DEP should use the 1987 Army Corps Manual to delineate the wetlands on Lifetime's property. The Commissioner noted that the DEP's staff had informally advised "Lifetime in 1990 that it would accept the wetlands line approved by the Army Corps in 1988 so long as development was not proposed in 'wetlands' or in the 'wetlands buffer area'" and that Lifetime relied upon that representation in entering into a settlement of *Mount Laurel* litigation. Accordingly, the Commissioner referred the matter to the Office of Administrative Law (OAL) to adjudicate the delineation of the wetlands on Lifetime's property as a "contested case."

On August 19, 1993, appellant sent a letter to Commissioner Fox, who had succeeded Commissioner Weiner, objecting to the former Commissioner's decision to use the 1987 Army Corps Manual in delineating the wetlands upon Lifetime's property. On September 23, 1993, the Commissioner responded by a letter which stated that "[s]ince the delineation issue is being referred to the [OAL], ... the most appropriate way to address [appellant's] concerns on the delineation issue would be in the context of the contested case proceedings." Consequently, Commissioner Fox

suggested that appellant move to intervene before the OAL. She also indicated that "if this matter eventually returns to the Appellate Division, it will have been helpful if the factual record developed in the OAL includes the delineation that would arise through the use of the 1989 Federal Manual and what delineation differences, if any, would result from the use of that manual instead of the 1987 Corps Manual."

Subsequently, Administrative Law Judge (ALJ) Fidler denied appellant's motion to intervene, because appellant had failed to establish either of the grounds for intervention set forth in *N.J.A.C.* 1:1–16.1(a), which limits intervention before the OAL to a party "who has a statutory right to intervene or who will be substantially, specifically and directly affected by the outcome of a contested case." However, the ALJ granted appellant "permission to participate" in the proceeding pursuant to *N.J.A.C.* 1:1–16.5, "limited to the right to file a statement or brief and the right to file exceptions to the initial decision."

Thereafter, Lifetime and the DEP exchanged technical data, conducted site investigations and engaged in extensive negotiations regarding the wetlands delineation of the property which eventually resulted in a settlement agreement.

On February 21, 1995, the Deputy Attorney General handling the matter on behalf of the DEP sent a letter to appellant's attorney enclosing a copy of the "Settlement Plan." This letter also stated that the parties were still negotiating the language of the "Stipulation of Settlement document." The letter advised appellant that a conference call to discuss the settlement would be held with the ALJ the following day and stated: "If I can provide you with any additional information, please call."

Insofar as the record before us indicates, appellant failed to respond to this letter.

On May 10, 1995, the Deputy Attorney General representing the DEP sent another letter to appellant's counsel, which enclosed a draft of the "Stipulation of Settlement Document" and a draft

"Settlement Plan." The letter also indicated that the draft documents had not been finalized, that the DEP would be holding meetings with Lifetime's engineer "in order to verify the boundaries of the 'Wetland/Open Water' areas depicted on the plan," and that a final copy of the documents would be provided to appellant "once they are accepted by the parties."

On May 26, 1995, appellant's counsel sent a letter to ALJ Fidler, which stated in part:

> I ... learned that the parties had a conference call with Your Honor with regard to this matter and intend to submit the Stipulation of Settlement. A comment period will then be established.
>
> As Your Honor is aware by your decision dated July 11, 1994, you permitted the Isaak Walton League to participate in the proceedings before the Office of Administrative Law and you afforded the League the right to argue orally, submit a statement or brief and file exceptions to the initial decision.
>
> The League has several significant concerns regarding the settlement which is currently proposed. We would appreciate the opportunity to be aware of all settlement conferences so that our position may be made known. We would also like to have a copy of the final documents including the stipulation and the accompanying maps. We intend to submit an analysis of the settlement for consideration by the Court. I believe that this is within the scope of Your Honor's previous decision and would appreciate your consideration in this regard and your advice accordingly.

The ALJ responded to this letter by a letter to all counsel, dated July 7, 1995, which stated that, under a recent amendment of the rules governing the OAL, the parties may simply file a stipulation of dismissal specifying the terms of the settlement, without the need for OAL approval.

After receiving this letter, appellant did not communicate further with the ALJ or the DEP.

On September 6, 1995, which was more than three months after the DEP had furnished appellant with copies of the proposed settlement documents, Lifetime and the DEP completed execution of the settlement relating to the delineation of the wetlands on Lifetime's property. This settlement designates one portion of the property as a "preservation area" which must be restricted by deed to prevent development, and another portion as a "development area" within which construction can be made without a

freshwater wetlands permit. The preservation area includes all of the freshwater wetlands contained within the delineation approved by the Army Corps plus an additional adjacent area of approximately 35 acres that the Army Corps designated as uplands. The settlement also requires Lifetime to install a hydrologic control structure to enhance the freshwater wetlands within the preservation area and to restore a previously disturbed area within the preservation area by removing fill. The preservation area generally covers the part of Lifetime's property closest to Barnegat Bay.

On September 21, 1995, the OAL notified the parties that "[p]ursuant to *N.J.A.C.* 1:1–19.1(d), this settlement document is deemed a final decision." On October 23, 1995, appellant filed its notice of appeal challenging the settlement.

On April 12, 1995, appellant filed a motion to supplement the record "with an expert report to evaluate the reasonableness of the delineation approved by the Stipulation of Settlement." The papers submitted in support of the motion stated that appellant had retained an environmental consulting firm to examine the Stipulation of Settlement and its compliance with the wetlands methodology of the FWPA and its implementing regulations, but that the consulting firm had not been able to complete a final report because it had been unable to gain access to the DEP's files, which apparently had been misplaced. The consultant's preliminary report, dated April 11, 1996, which critiqued the methodology used by Lifetime's expert, was appended to the motion.

On May 22, 1996, we denied appellant's motion to supplement the record.

Appellant's arguments on appeal focus upon Commissioner Weiner's June 24, 1993, order to the DEP staff to use the 1987 Army Corps Manual rather than the 1989 Federal Manual to delineate the wetlands on Lifetime's property. Appellant's primary argument is that Commissioner Weiner's order violated *N.J.S.A.* 13:9B–3, which defines "freshwater wetland" as:

[A]n area that is inundated or saturated by surface water or groundwater at a frequency and duration sufficient to support, and that under normal circumstances does support, a prevalence of vegetation typically adapted for life in saturated soil conditions, commonly known as hydrophytic vegetation; provided, however, that the department, in designating a wetland, shall use the 3–parameter approach (i.e. hydrology, soils and vegetation) enumerated in the April 1, 1987 interim-final draft "Wetland Identification and Delineation Manual" developed by the United States Environmental Protection Agency, and any subsequent amendments thereto.

Appellant contends that Commissioner Weiner had no authority under this definition of "wetlands" to grant a waiver from the requirement that the DEP use the EPA rather than the Army Corps Manual in delineating wetlands, and that even if the Commissioner had such authority, Lifetime did not demonstrate the existence of equitable factors which would justify the grant of a waiver. Appellant argues that the stipulation of settlement between Lifetime and the DEP is "suspect" because of the legal and factual issues relating to Commissioner Weiner's June 24, 1993 order and consequently there must be a remand to the DEP "to establish a basis in the record for the settlement."

We conclude that the settlement between Lifetime and the DEP can be reviewed without the court passing upon any of the issues appellant raises regarding the order issued by Commissioner Weiner. We also conclude that appellant has failed to show that the settlement was arbitrary or unreasonable or that there is a need for a remand to develop a complete record supporting the settlement.

The Administrative Procedure Act (APA) specifically authorizes state agencies to settle contested cases pending before the OAL. *N.J.S.A.* 52:14B–9(d) provides that:

Unless precluded by law, informal disposition may be made of any contested case by stipulation, agreed settlement, or consent order.

Moreover, under the rules of the OAL, as amended prior to the settlement in this case, if the agency head approves the settlement, the ALJ to whom a contested case has been assigned is not required to conduct any proceeding regarding the settlement or to

review its reasonableness. *N.J.A.C.* 1:1–19.1(c).[1]

 These statutory and regulatory provisions reflect the strong public policy of this State favoring the settlement of litigation, including contested cases before the OAL. Settlements permit parties to resolve disputes on mutually acceptable terms rather than exposing themselves to the uncertainties of litigation. *See Morris County Fair Hous. Council v. Boonton Township*, 197 *N.J.Super.* 359, 366, 484 *A.2d* 1302 (Law Div.1984), *aff'd o.b.*, 209 *N.J.Super.* 108, 506 *A.2d* 1284 (App.Div.1986). "Settlements also save parties litigation expenses and facilitate the administration of the courts by conserving judicial resources." *Ibid.* Consequently, settlements are generally upheld absent clear and convincing evidence of fraud or other compelling circumstances. *See Nolan v. Lee Ho*, 120 *N.J.* 465, 472, 577 *A.2d* 143 (1990).

 Appellant has failed to cite any provision of the FWPA which requires the approval of an ALJ or any other outside agency of a settlement between the DEP and a property owner regarding a wetlands delineation. Our own review of the applicable statutory and regulatory provisions also has not revealed any such requirement. Therefore, we conclude that the DEP's settlement of a dispute regarding the delineation of wetlands is not "precluded by law." *N.J.S.A.* 52:14B–9.

 We also conclude that the DEP and Lifetime were not precluded from settling their dispute simply because the appellant was granted leave "to participate" in the proceedings before the OAL. Such opportunity for "participation" does not confer party

---

[1] Although the Stipulation of Settlement filed with the OAL was signed by Ernest Hahn, the Administrator of the Land Use Regulation Element of the DEP, rather than by the Commissioner, the Deputy Attorney General representing the DEP advised us at oral argument that this official has been delegated the authority to act on the Commissioner's behalf with respect to this type of matter. Appellant has not disputed that Mr. Hahn has such delegated authority. Therefore, we assume that the settlement was properly entered into pursuant to *N.J.A.C.* 1:1–19.1(c) and that the ALJ was not required to proceed in accordance with *N.J.A.C.* 1:1–19.1(a) and (b).

status which would permit an organization such as appellant to assert veto power over a proposed settlement. And even assuming that a party which the OAL has granted "participant" status is entitled to submit comments regarding a proposed settlement, the record shows that appellant was given this opportunity. The DEP notified appellant of the tentative settlement more than six months before it was finalized and provided appellant with the settlement documents more than three months before that date. In addition, the ALJ advised appellant at least two months before the settlement documents were executed that he would not be reviewing the merits of the settlement. However, appellant did not even attempt to submit any comments to the DEP regarding the settlement until seven months after it was finalized, when it filed a motion to supplement the record on appeal. By this time, it was obviously too late for the appellant to have any input in the DEP's decision whether to finalize its proposed settlement with Lifetime.

Notwithstanding appellant's failure to submit any comments regarding the proposed settlement, we assume, without deciding, that appellant has standing to challenge the settlement by an appeal to this court. *Cf. SMB Assocs. v. New Jersey Dept. of Envtl. Protection,* 264 *N.J.Super.* 38, 46–47, 624 *A.*2d 14 (App.Div. 1993), *aff'd,* 137 *N.J.* 58, 61–62, 644 *A.*2d 558 (1994); *but compare Bergen Pines Hosp. v. New Jersey Dept. of Human Servs.,* 96 *N.J.* 456, 474–76, 476 *A.*2d 784 (1984). However, appellant has failed to show that the settlement is unreasonable or inconsistent with the policies underlying the FWPA.

As previously noted, the focus of appellant's attack upon the settlement is Commissioner Weiner's June 24, 1993 order directing the DEP staff to use the 1987 Army Corps Manual in delineating the wetlands on Lifetime's property. However, we perceive no direct relationship between that order and the terms of the eventual settlement entered into more than two years later. We note that William Dixon, the "principal environmental specialist" in the DEP responsible for the delineation of the wetlands on Lifetime's property, expressed the opinion that the amount of

wetlands on Lifetime's property would be substantially the same, regardless of whether the delineation was made pursuant to the methodology set forth in the 1987 Army Corps Manual or the one set forth in the 1989 Federal Manual. We further note that wetlands delineations are complex and imprecise regardless of the methodology used. Thus, the DEP staff could have had a legitimate concern that the ALJ or this court would ultimately accept Lifetime's wetlands delineations. In addition, while we find no need to rule upon Lifetime's argument that, because of changes in the governing federal regulations subsequent to the enactment of the FWPA, the DEP is now required to use the 1987 Army Corps Manual in delineating wetlands, this argument is certainly not frivolous. Consequently, the DEP was not required to fully litigate this issue by insisting on the completion of a new delineation using the 1989 Federal Manual before agreeing to a settlement with Lifetime. Cf. *Morris County Fair Hous. Council v. Boonton Township, supra,* 197 *N.J.Super.* at 371, 484 *A.*2d 1302 (Full litigation of the "fair share" issue was not necessary as a prerequisite to determining whether a *Mount Laurel* settlement was fair and reasonable). Moreover, even though Lifetime claimed that the DEP should simply accept the Army Corps' wetlands delineation, the settlement included thirty-five more acres in the "Preservation Area" than the Army Corps had designated as wetlands and also imposed obligations upon Lifetime to restore a portion of the preservation area and to install a hydrologic control structure designed to enhance the wetlands within the preservation area. Therefore, we conclude that appellant has failed to show that the procedures which the DEP followed in entering into the settlement with Lifetime were unfair or that the substantive terms of the settlement were arbitrary or unreasonable.

Affirmed.