707 A.2d 186

LIVINGSTON BUILDERS, INC., PLAINTIFF–RESPONDENT, v. TOWNSHIP OF LIVINGSTON, TOWNSHIP COUNCIL OF LIVINGSTON, AND PLANNING BOARD OF THE TOWNSHIP OF LIVINGSTON, DEFENDANTS–RESPONDENTS, AND ALBERT MANDA, MARGARET MANDA, AND W.A. MANDA, INC., PLAINTIFFS–RESPONDENTS, v. TOWNSHIP OF LIVINGSTON, AND THE PLANNING BOARD OF THE TOWNSHIP OF LIVINGSTON, DEFENDANTS–RESPONDENTS, AND SHORT HILLS WEST, LTD., OBJECTOR–APPELLANT, AND CHESTNUT HILL CIVIC ASSOCIATION, OBJECTOR–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 14, 1998—Decided March 31, 1998.

372

Before Judges BROCHIN, WEFING and BRAITHWAITE.[1]

---

[1] Judge Braithwaite was not present during the argument of this matter. He has joined in the consideration of the appeal and in the opinion with the consent of the attorneys for all of the parties.

*Stephen Eisdorfer* argued the cause for appellant (*Hill Wallack*, attorneys; *Mr. Eisdorfer*, on the brief).

*Gary T. Hall* argued the cause for respondents Township of Livingston, Township Council of Livingston, and the Planning Board of the Township of Livingston (*McCarter & English*, attorneys; *Lois M. Van Deusen*, of counsel; *Mr. Hall*, on the brief).

*Robert S. Greenbaum* argued the cause for respondent Chestnut Hill Civic Association (*Greenbaum, Rowe, Smith, Ravin, Davis & Himmell*, attorneys; *Mr. Greenbaum*, on the brief).

The opinion of the court was delivered by

BROCHIN, J.A.D.

Two *Mount Laurel* [2] exclusionary zoning suits were instituted against the Township of Livingston and then consolidated. The plaintiffs in those suits claimed builders' remedies.[3] Livingston has negotiated a tentative settlement of those suits. Chestnut Hill Civic Association is an organization composed of persons who reside in the vicinity of a 9.9–acre property in Livingston owned by Short Hills West, Ltd. Chestnut Hill intervened in the consolidated action and objected to the provisions of the settlement which contemplate the rezoning and development of that property. The matter presently before us for review is Short Hills West's interlocutory appeal from an August 5, 1997 order of the Law Division. That order denied reconsideration of an April 25, 1997 order which, sustaining Chestnut Hill's objections, rejected the contemplated development of the Short Hills West site on the

---

[2] *Southern Burlington County N.A.A.C.P. v. Township of Mount Laurel*, 67 *N.J.* 151, 336 *A.*2d 713, *appeal dismissed and cert. denied*, 423 *U.S.* 808, 96 *S.Ct.* 18, 46 *L. Ed.*2d 28 (1975) (*Mount Laurel I*); *Southern Burlington County N A.A.C.P. v. Township of Mount Laurel*, 92 *N.J.* 158, 456 *A.*2d 390 (1983) (*Mount Laurel II*).

[3] For the origin and a description of the builder's remedy, see *Mount Laurel II*, *supra*, 92 *N.J.* at 278–81, 456 *A.*2d 390; *Oakwood at Madison, Inc. v. Township of Madison*, 72 *N.J.* 481, 548–51, 596–601, 371 *A.*2d 1192 (Pashman, J., concurring in part and dissenting in part) (1977).

ground that that development would be "inconsistent with and not in compliance with applicable *Mt. Laurel* principles."

The objective of a *Mount Laurel* suit is to establish conditions reasonably calculated to result in the construction of a municipality's fair share of affordable housing. Disposition of such a suit should ordinarily result in the entry of a judgment of compliance and repose which adjudicates that "there are land use regulations and affirmative devices in place conforming to [the municipality's] constitutional obligation" with respect to the availability of affordable housing. *Mount Laurel II, supra,* 92 *N.J.* at 290, 456 *A.*2d 390.

The proposed settlement of the present litigation contemplates the entry of such a judgment. It would have an extraordinary *res judicata* effect and would vitally affect the rights of parties who are not themselves before the court. *See Mount Laurel II, supra,* 92 *N.J.* at 291–92, 456 *A.*2d 390; *Morris County Fair Hous. Council v. Boonton Township,* 197 *N.J.Super.* 359, 364, 484 *A.*2d 1302 (Law Div.1984), *aff'd o.b.,* 209 *N.J.Super.* 108, 506 *A.*2d 1284 (App.Div.1986). Consequently, as the court and the parties to the present matter have recognized, the present litigation cannot be settled without a fairness hearing in which the court determines that the interests of affected parties have been fairly treated. *See Morris County, supra,* 197 *N.J.Super.* at 365–71, 484 *A.*2d 1302.

The proposed settlement of the *Mount Laurel* litigation against Livingston contemplates zoning amendments which their proponents contend are reasonably calculated to result in the construction of the municipality's fair share of affordable housing. The Livingston Township Council and its Planning Board have adopted a Housing Element and Fair Share Plan which summarizes the proposed amendments and describes how the municipality expects to achieve compliance with its affordable housing obligation. *See N.J.S.A.* 40:55D–28 (master plan); *N.J.S.A.* 40:55D–62a (requiring, as a general rule, substantial consistency between the master plan and any zoning amendment); *Manalapan Realty, L.P. v. Township Comm. of Manalapan,* 140 *N.J.* 366, 384, 658 *A.*2d 1230

(1995) (" '[S]ubstantially consistent' permits some inconsistency, provided it does not substantially or materially undermine or distort the basic provisions and objectives of the Master Plan."). Livingston's Fair Share Plan contemplates the construction of 193 units of low and moderate cost residential housing. Most of these will be housing units already built or to be built within the Township. Some will be units credited to Livingston in exchange for payments under Regional Contribution Agreements pursuant to COAH (Council on Affordable Housing) regulations.

One of the properties which is to be rezoned in conformity with the amended master plan housing element in order to create a "realistic development potential," *N.J.A.C.* 5:93–1.3; *N.J.A.C.* 5:93–4.2(f), to fulfill Livingston's affordable housing obligation is the 9.9–acre site owned by Short Hills West. That property is located adjacent to the St. Barnabas Medical Center. Currently, the property is zoned R–1 residential. The Township's plan contemplates that it will be rezoned to enable it to become the site for 125 assisted living dwelling units for senior citizens and an office building of 60,000 square feet.

In accordance with the procedure prescribed by *Morris County, supra,* the Law Division scheduled a hearing on notice to all potentially interested parties to consider the fairness of the terms of the proposed settlement of the pending litigation. The fairness hearing was conducted on March 5, 1997.[4] Two witnesses testified at the hearing, both as experts.

---

[4] The judge who presided described the proceeding as "[a] public hearing which gives a right to the public to be heard on an issue which is of general interest." He characterized it as "quasi[-]legislative in nature" and stated that its purpose was to give interested persons the opportunity to provide "meaningful input into the process." He declared, "It is not a judicial proceeding in which there's a right of cross[-]examination .... It is judicial only with respect to the individual parties that are affected and are parties to the proceeding."

We disagree with the view that a *Mount Laurel* fairness hearing is "quasi-legislative" and "not judicial." The proceeding is a judicial proceeding required by due process considerations to provide notice to persons who will be affected by a settlement and to give them the opportunity to present to the

Mr. John J. Lynch, an attorney and licensed professional planner, whom the court had appointed as a master in one of the builder's remedy suits, testified in favor of the plan and of the proposed settlement. He supported the plan's conclusion that 193 units of affordable housing is the Township's "realistic development potential." *See N.J.A.C.* 5:93–4.2(f). He stated that the assisted living units planned for the site would qualify as residential housing for the purpose of satisfying Livingston's fair share obligation. *N.J.A.C.* 5:93–5.8(a). But he expressed the opinion that, judged by COAH rules, the planned number of assisted living housing units set aside for low and moderate income occupants was insufficient and that the plan was also flawed because it did not require Short Hills West to pay a development fee to build the office building. Mr. Lynch stated, however, that after the submission of his report pointing out those shortcomings, Short Hills West had agreed to increase the number of units to be set aside for low and moderate income occupants from eleven to nineteen and to pay a development fee equal to one percent of the assessed valuation of the office building. He testified that these modifications remedied all of the deficiencies in the plan which he considered relevant to the issues to be decided at the fairness hearing. He declined to testify about zoning issues because he considered those issues immaterial to the proper subject matter of the fairness hearing.

Chestnut Hill Civic Association presented the opposing testimony of P. David Zimmerman, who is also a licensed professional planner. He stated that he approved of the plan for constructing 125 assisted living housing units for senior citizens on the Short Hills West site and reserving approximately fifteen percent of them for low and moderate income occupants. That provision, he testified, "obviously addresses directly Livingston's *Mount Laurel*

court any legal reasons why the proposed settlement should not be approved. However, the hearing court's inaccurate characterization of the proceeding is of no legal significance because no one contends that the mischaracterization adversely affected his opportunity to adduce relevant evidence.

obligation." But he criticized the plan because "[t]he inclusion of an office building on the site is extraneous to the *Mount Laurel* issues that the plan is seeking to address and [there is no] rationale for its being included." In response to questioning, however, he conceded that if the development fee for the office building was "made available to a housing trust or some other resource" the fee would contribute to satisfying the municipality's fair share obligation.

An order was entered on April 7, 1997, which is captioned "order approving with conditions *Mt. Laurel* compliance plan after fairness hearing." This order recites that "[t]he only objections were presented by ... Chestnut Hill Civic Association, which objected only to the zoning proposal for the Short Hills West property, which will be the subject of further proceedings." The order approved "[t]he calculation of Livingston Township's fair share obligation" at 193 residential units, "as set forth in the adopted Housing Element and Fair Share Plan." It also conditionally approved the settlement agreements and a related contract with five specified developers other than Short Hills West. This approval was conditioned on certain modifications of the agreements, the approval of their final form by the master and the court, and the adoption of appropriate municipal resolutions and ordinances, including a "Development Fee Ordinance, Spending Plan and Ordinance setting forth administrative affordable housing regulations," "a proposed memorandum of understanding setting forth binding rights and a reasonable time frame for Livingston Township to enter into ... regional contribution agreements," and other agreements necessary for implementation of the settlement. The order also provides that a "Final Judgment of *Mt. Laurel* Compliance and Repose" is to be entered, but only after the conditions have been met and upon the occurrence of the later of: 1) "final trial court resolution of all issues involving [the Short Hills West site]"; 2) "expiration of the time for appeal following adoption of all Ordinances necessary to implement the Fair Share Plan"; or 3) "a final trial court resolution of any challenge to any such Ordinance." The order expressly withholds

approval of the proposed agreement for the development of the Short Hills West site pending further proceedings.

On April 25, 1997, an order was entered which rejected the Short Hills West proposal "as inconsistent with and not in compliance with applicable *Mt. Laurel* [p]rinciples." The rationale for this rejection appears to be that the court interpreted those principles as disfavoring construction of an office building on part of a site whose zoning, terrain, and access to infrastructure made it potentially suitable in its entirety for residential use.

Short Hills West moved for reconsideration of the April 25, 1997 order and its motion was denied. In a colloquy which ensued during the argument of the motion for reconsideration, the court invited Short Hills West to present an agreement with the Township that provided only for the construction of the housing for assisted living for senior citizens and was not contingent on rezoning to permit construction of the office building. The court, in effect, assured the parties that a settlement based on such an agreement would be approved and that, if any party with standing objected to subdividing the tract or rezoning it for commercial use, the subdivision and rezoning could be challenged and the challenges decided in the usual course in an action in lieu of prerogative writs.

On the motion of Short Hills West, we granted leave to appeal from the order denying reconsideration. Appellant now argues to us that "[t]he portion of the municipal compliance plan providing for zoning of Short Hills West property for mixed use development is entirely consistent with ... [*Mount Laurel*] principles" and is not illegal "contract zoning." Short Hills West also asserts that the trial court's decision "intruded improperly into the realm of municipal planning discretion" and has "stymie[d] the prompt and just resolution of this case."

In defense of the trial court's decision, Chestnut Hill Civic Association argues, asserting grounds different from those relied on by the hearing court, that the Short Hills West site "was not ripe for evaluation in a *Mount Laurel* compliance hearing and was

appropriately rejected"; that the court properly concluded that the proposed settlement "in a scarce land resource and scarce wastewater sewerage capacity environment ... [would] abuse the premise for COAH'S fair share burden allocation," that premise being, according to Chestnut Hill, "the RDP [realistic development potential] analysis which projected a total of 59 dwelling units on the 9.9 acre site"; and that the proposed rezoning of the Short Hills West site should be rejected as the basis for the settlement because it is "bad planning" which therefore "would not create a realistic opportunity for affordable housing."

According to all of the expert testimony in the present case, Livingston's fair share of affordable housing was correctly calculated at 193 units. This conclusion was expressly reflected in the hearing court's order of April 7, 1997, which explicitly approves that calculation. There has been no claim to the contrary, nor has there been any claim that that result is somehow constitutionally flawed.

The record also shows without dispute that the nineteen units of affordable housing which Short Hills West agreed to construct as part of the 125 dwelling units designed for assisted living by senior citizens is an appropriate *Mount Laurel* "set aside," *N.J.A.C.* 5:93–5.8(a), and will constitute partial fulfillment of Livingston's *Mount Laurel* obligation; that the construction of the units for assisted living, the collection of the agreed development fee and its use for constructing or rehabilitating low and moderate cost housing, and the implementation of the other provisions of the settlement to which there has been no objection will fully satisfy Livingston's Fair Share obligation; and that there is a high probability that the anticipated units of affordable housing will actually be constructed if the contemplated zoning and planning decisions are taken and are valid. The hearing judge's approval of all of the provisions of the settlement except those relating to the Short Hills West site and his indicated willingness to also approve all of the provisions relating to that site except those which

contemplate construction of the office building presumably reflect his recognition that these are the facts shown by the record.

A trial judge should approve a settlement of *Mount Laurel* litigation if a fairness hearing, conducted on appropriate notice, demonstrates "that the settlement adequately protects the interests of lower-income persons on whose behalf the affordable units proposed by the settlement are to be built." *East/West Venture v. Borough of Fort Lee,* 286 *N.J.Super.* 311, 328, 669 *A.*2d 260 (App.Div.1996). We explained in that case that the court should consider all "factors which may be relevant to the 'fairness' issue," including "the number of affordable housing units being constructed, the methodology by which [that] number . . . has been derived, any other contribution being made by the developer to the municipality in lieu of affordable units, [and] other components of the agreement which contribute to the municipality's satisfaction of its constitutional obligation." *Ibid.*

By adoption of the Fair Housing Act, *N.J.S.A.* 52:27D–301 to –329, the Legislature, with the Supreme Court's approval, has designated the Council on Affordable Housing, acting pursuant to the Act, to establish the criteria for defining what a municipality must do to comply with its constitutional obligation to "provide through its land use regulations a realistic opportunity for a fair share of its region's present and prospective needs for housing for low and moderate income families." *N.J.S.A.* 52:27D–302a; *see Hills Dev. Co. v. Township of Bernards,* 103 *N.J.* 1, 25, 31–32, 510 *A.*2d 621 (1986). COAH has established those criteria, *see N.J.A.C.* 5.93–1.1 to –15.1, and the courts should ordinarily defer to them. *Hills Dev. Co., supra,* 103 *N.J.* at 63, 510 *A.*2d 621; *East/West Venture, supra,* 286 *N.J.Super.* at 334 n. 6, 669 *A.*2d 260. If the relevant evidence presented at a fairness hearing held on proper notice to all interested parties shows that a proposed settlement satisfies those criteria, the settlement is entitled to the court's preliminary approval.

How Livingston meets its affordable housing obligation and, once that obligation is met, how the municipality zones or rezones property within its boundaries is not a *Mount Laurel* issue. *East/West Venture, supra,* 286 *N.J.Super.* at 336, 669 *A.*2d 260. What is appropriate zoning for the Township is a legislative determination to be decided by its council and planning board, subject to the Municipal Land Use Law, *N.J.S.A.* 40:55D–1 to – 136. *See Kozesnik v. Township of Montgomery,* 24 *N.J.* 154, 167, 131 *A.*2d 1 (1957) (zoning is a legislative power); *Sporkin v. Stafford Township,* 227 *N.J.Super.* 569, 571, 548 *A.*2d 218 (App. Div.1988) ("It is fundamental that zoning is a municipal legislative function, beyond the purview of interference by the courts unless an ordinance is seen in whole or in application to any particular property to be clearly arbitrary, capricious or unreasonable, or plainly contrary to fundamental principles of zoning or the statute.") (citation omitted); *see also, William M. Cox, New Jersey Zoning and Land Use Administration,* § 1–1, at 1–2 (1997) (authority to regulate land use is a legislative power and municipalities must exercise that power in conformity with the Municipal Land Use Law). It was therefore improper for the hearing court to veto a part of Livingston's proposed settlement on the ground that, in the court's view, the Short Hills West site would have supported more housing units than currently planned for it if the owner of the site wanted to build them. Neither Livingston nor the court can command the construction of particular affordable housing and, subject to challenge in an appropriate action, it was for the Township to determine what inducements are necessary and reasonable to motivate the property owner to build the housing that would satisfy the municipality's constitutional obligation. *See N.J.S.A.* 52:27D–311.

We also reject the view that the proposed settlement involves illegal contract zoning. "Contract zoning" refers to a municipality's attempt "by contract with a property owner, to authorize the property owner to use his property in contravention of the zoning ordinance *and without compliance with the statuto-*

*rily established procedures for either obtaining a zoning variance or an amendment to the master plan and zoning ordinance."* Cox, supra, § 34–8.2, at 603–04 (emphasis added); *see also, East/ West Venture, supra,* 286 *N.J.Super.* at 324–25, 669 *A.*2d 260 (municipality must not circumvent procedural safeguards when adopting zoning ordinances or amendments); *Warner Co. v. Sutton,* 274 *N.J.Super.* 464, 470–74, 644 *A.*2d 656 (App.Div.1994) (describing "contract zoning").

In the present case, the proposal for rezoning to permit a mixed use development on the Short Hills West property was included in the revised master plan which was the subject of an open public meeting. The hearing court's order of April 7, 1997, which conditionally approved the provisions of the settlement unrelated to the Short Hills West property, makes final approval of the settlement and the entry of a judgment of compliance and repose expressly conditional on the adoption of all necessary ordinances and their survival on appeal. The settlement provisions relating to the Short Hills West property would be subject the same conditions. These facts do not amount to illegal contract zoning. *Cf. East/West Venture, supra,* 286 *N.J.Super.* at 328, 669 *A.*2d 260 (approval of settlement following fairness hearing and conditioned on compliance with procedural safeguards is proper); *Warner Co., supra,* 274 *N.J.Super.* at 478–80, 644 *A.*2d 656 (settlement without fairness hearing is unlawful contract zoning).

■ *East/West Venture, supra,* also holds that a fairness hearing is not the forum in which to "adjudicate the zoning and planning issues implicated by the [settlement] agreement." *East/ West Venture, supra,* 286 *N.J.Super.* at 328, 669 *A.*2d 260. Rather, "[u]pon a finding that the agreement is 'fair,' the judge, without entering judgment, should first determine whether any of the provisions of the settlement are *ultra vires* or otherwise invalid. He or she should then remand for appropriate amendments to the master plan and zoning ordinance necessary to implement the agreement." *Ibid.*

Chestnut Hill's remaining arguments in support of the order appealed from all challenge the zoning and planning measures that will be necessary to finalize the settlement. The holding which we have just quoted from *East/West Venture, supra,* establishes that the assertion of these arguments now is premature and that they are not the proper subject of the fairness hearing. Chestnut Hill, or any other proper party, will have the opportunity to assert these arguments before the appropriate body considering adoption of the measure objected to and, if necessary, in an action in lieu of prerogative writs.

An order should be entered tentatively approving the provisions of the proposed settlement relating to the Short Hills West property. Like the order already entered approving the other aspects of the settlement, the order to be entered should confer only an approval in principle. Final approval of the entire settlement and the entry of a judgment of compliance and repose must wait until necessary ordinances have been validly adopted, any challenges to them have been disposed of, and all of the other conditions enumerated in the April 7, 1997 order have been satisfied.

The August 5, 1997 order denying rehearing of the order of April 25, 1997 is hereby reversed. This matter is remanded to the Law Division for the entry of an order granting rehearing, vacating the order of April 25, 1997, and tentatively approving the proposed settlement in its entirety, subject to the conditions stated in the order of April 7, 1997. Any actions in lieu of prerogative writs attacking ordinances contemplated by the settlement should be consolidated with this proceeding for approval of the settlement. *East/West Venture, supra,* 286 *N.J.Super.* at 329, 669 *A.*2d 260.

The order appealed from is reversed and the matter is remanded to the Law Division for further proceedings consistent with this opinion.